Lydia KORZEN and Marsha O'Brien,
Plaintiffs–Appellants,

v.

LOCAL UNION 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
Defendant–Appellee.

No. 95–2343.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1995.

Decided Jan. 25, 1996.

---

Robert R. Tepper (argued), Chicago, IL, for Plaintiffs–Appellants.

Peggy A. Hillman (argued), Indianapolis, IN, Michael H. Slutsky, Allison, Slutsky & Kennedy, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

This is a suit under section 301 of the Taft–Hartley Act, 29 U.S.C. § 185(a), to enforce two provisions in union constitutions. (All other claims have been abandoned.) One is a provision of the constitution of the International Brotherhood of Teamsters, the other a provision of the constitution of the Teamsters local to which the plaintiffs belong. The local is the defendant. It employed the plaintiffs as secretaries to its chief, and they charge that when he was removed from office for alleged improprieties they were fired by his successor in retaliation for their perceived support of the faction to which the former chief, their boss, had belonged. Their summary discharge on this ground, without an opportunity for a hearing on the propriety of the discharge, is claimed to violate both the provision of the international's constitution forbidding "retaliating or threatening to retaliate against any member [of the Teamsters union] for exercising rights under this Constitution or applicable law, including the right to speak, vote, seek election to office, support the candidate of one's choice or participate in the affairs of the Union," and the provision of the local's constitution that "every member, by virtue of his membership in the Local Union, authorizes his Local Union to act as his exclusive bargaining representative with full and exclusive power to execute agreements with his employer governing terms and conditions of employment and to act for him and have final

authority in presenting, processing, and adjusting any grievance, difficulty or dispute arising under any collective bargaining agreement or out of his employment with such employer." The district court granted summary judgment for the union without deciding whether there had been any retaliatory or otherwise improper motive for the discharge of the two plaintiffs, so we assume for purposes of the appeal that there was such a motive.

 It is not so obvious as the parties and the district judge have assumed that this case is within the jurisdiction of the federal courts. Despite a factual configuration suggestive of a violation of the free-speech clause of the Labor–Management Reporting and Disclosure (Landrum–Griffin) Act, 29 U.S.C. § 411(a)(2); *Sewell v. Grand Lodge*, 445 F.2d 545 (5th Cir.1971), the plaintiffs did not include such a claim in their complaint (for good reason, as we shall see). Their federal noncontractual claims were dismissed on summary judgment or settled out, and have been abandoned, leaving only their contractual claims. Section 301 confers jurisdiction to hear a suit for breach of a contract between an employer and a labor organization (that is, a collective bargaining contract) or between two labor organizations. The local union in this case was the plaintiffs' employer within the meaning of federal labor law, 29 U.S.C. § 152(2); *Office Employees Int'l Union v. NLRB*, 353 U.S. 313, 316, 77 S.Ct. 799, 801, 1 L.Ed.2d 846 (1957), but the plaintiffs, of course, are not labor organizations. A simple employment contract is not within the scope of section 301, even when the employer is a union, *Kunz v. United Food & Commercial Workers*, 5 F.3d 1006, 1009 (6th Cir.1993), for it is neither a contract between an employer and a labor organization nor a contract between two labor organizations. Union constitutions have been held to be contracts within the scope of section 301 and members of the union held entitled to sue to enforce the contract-constitution as third-party beneficiaries. *United Ass'n of Journeymen & Apprentices v. Local 334*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); *Wooddell v. International Brotherhood of Electrical Workers*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Shea*

*v. McCarthy*, 953 F.2d 29, 30–31 (2d Cir. 1992). But in each of these cases it was the constitution of an *international* union that was at issue, and an international union is plausibly conceived of as a contractual union of its locals. *Wooddell* and *Shea* do not emphasize the international character of the unions whose constitutions were in issue in those cases, but it is plain from the *Journeymen* case, which established the principle that a union's constitution can be a contract between labor organizations within the meaning of section 301, that the basis for it is the fact that an international's constitution is a contract between the international and its locals. 452 U.S. at 620–23, 101 S.Ct. at 2549–51. The constitution of a local union, in contrast, is a contract between the union and its members, *Talton v. Behncke*, 199 F.2d 471, 473 (7th Cir.1952); *Simoni v. Civil Service Employees Ass'n, Inc.*, 133 Misc.2d 1, 507 N.Y.S.2d 371, 377 (S.Ct.1986), in the same way that a corporate charter is a contract between the corporation and its shareholders (as well as between the state and the corporation and among the shareholders). *Staar Surgical Co. v. Waggoner*, 588 A.2d 1130, 1136 (Del.1991). A suit on a contract between a labor organization and a member is not within the scope of section 301.

 So there is federal jurisdiction over the plaintiffs' claim for breach of the international's constitution, of which they as members of the union are third-party beneficiaries, but not over their claim for breach of the local's constitution. That claim is a straightforward claim for breach of contract under state common law. See *Newell v. International Brotherhood of Electrical Workers*, 789 F.2d 1186, 1190–91 (5th Cir. 1986). (It is not preempted by the National Labor Relations Act, because the firing of these plaintiffs was unrelated to conduct either protected or prohibited by that Act. *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 296–98, 91 S.Ct. 1909, 1922–24, 29 L.Ed.2d 473 (1971); *LaBuhn v. Bulkmatic Transport Co.*, 865 F.2d 119 (7th Cir.1988); Robert A. Gorman, *Basic Text on Labor Law: Unionization and Collective Bargaining* 779–80 (1976).) As such,

however, it fits comfortably within the district court's supplemental jurisdiction. 28 U.S.C. § 1367. In contrast, the district court's jurisdiction over the claim for breach of the international's constitution could not be comfortably supported as a supplement to the district court's jurisdiction over the plaintiff's other federal claims, now settled. We have been given no reason to suppose that any of these claims, which even the plaintiffs have now abandoned, ever had any substance; they may have been frivolous; and a frivolous claim does not invoke the jurisdiction of the federal courts. *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974); *Crowley Cutlery Co. v. United States,* 849 F.2d 273, 276 (7th Cir.1988).

Even retention of jurisdiction over the claim of breach of the local's constitution may seem questionable. The federal claim to which it is a supplement, although nonfrivolous, was dismissed before trial, and ordinarily when that happens the proper course is to relinquish jurisdiction over the state law claim in order to minimize federal judicial intrusion into an area of state law. See 28 U.S.C. § 1367(c)(3); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993). But since, as we shall see, the supplemental claim plainly lacks merit, it is better to resolve it on the merits rather than remand for a determination by the district judge whether to retain it as a matter of discretion or remand it to state court. *Id.; Martin–Trigona v. Champion Federal Savings & Loan Ass'n,* 892 F.2d 575, 578 (7th Cir.1989).

There is a question, as we are about to see, whether the international's constitution confers any job rights on the plaintiffs, as they contend. But it is a question—in fact the question—about the merits of their claim, rather than about jurisdiction over it. (If there were no jurisdiction, then neither would there be jurisdiction over the alleged violation of the local's constitution, a purely derivative jurisdiction.) As members of the union, they can sue to enforce the international's constitution. What the constitution means in relation to their claim is a question about the merits of that claim.

The claim is argued as follows: the constitution forbids retaliation against a member of the union for expressing a view concerning the filling of union offices; discharge is a form of retaliation; the discharge of the plaintiffs was retaliation for their supporting their boss's faction; they are union members; therefore their rights under the constitution were violated. The argument is logically impeccable, but it assumes what we believe to be false, that the international's constitution regulates the employment relation. A union constitution regulates the relation between the union and its members, not the relation between the union and its employees, since even if the union's employees are themselves members of the union, they will be only a tiny fraction of the membership. Without some showing of necessity not attempted here, moreover, the union cannot even force its employees to join it. *Teamsters Local Union No. 688,* 215 N.L.R.B. 852, 855, 1974 WL 11294 (1974). (The union-shop provision of the National Labor Relations Act is not applicable, since the "employer," that is, the union, did not have a collective bargaining agreement with its employees. 29 U.S.C. § 158(a)(3).) Employees of a union can no more obtain job protection by joining the union that employs them than an employee of a business firm could obtain job protection by buying stock in the firm. Members and employees of an association occupy different roles, and rules for the protection of the occupant of the one role do not carry over to the second even if the same person happens to occupy both. This is sufficiently obvious to override the literal terms of the provision on which the plaintiffs rely. They could have introduced evidence that the provision really was intended to protect employees as well as members of the union, but they did not. They rested on the words of the constitution, overlooking the possibility that its domain is the relation of membership rather than the employment relation. The only provisions regarding employment are provisions allowing locals' business agents to be dismissed at will and establishing procedures for the disciplining of union officers. These provisions are concerned with union governance rather than with the rights of

rank and file employees who might not even be members of the union.

 Although the plaintiffs adopt the method of literalism in interpreting the international's constitution, they urge flexible interpretation in the case of the local's constitution. Read literally, the provision of that constitution that we quoted earlier would require the union to prosecute grievances against itself. The plaintiffs concede that the union has no such obligation—that it would be an absurdity to require the union to prosecute itself—and hence that the provision should not be read literally. See *Kunz v. United Food & Commercial Workers, supra,* 5 F.3d at 1009; *Nix v. NLRB,* 418 F.2d 1001, 1009 (5th Cir.1969). They urge an interpretation that would require the union to provide some type of process before it fired any of its employees. We read a different significance into the provision: that it reinforces the inference that neither constitution is concerned with the relation between the union and its employees. It is true that the provision of the local's constitution on which the plaintiffs rely is concerned with the employment relation, unlike the provision of the international's constitution on which they rely. But it is concerned with the relation between the members of the union and their employers *other than* the union itself.

If the union had had a collective bargaining agreement with its employees, as some unions do but Local 705 did not, and if the collective bargaining representative had been the same union, the same local, as was the employer, a nice question would be presented concerning the union's duty to the plaintiffs. For then the union really would be on both sides of the employment relation. That is not our case. There was no collective bargaining agreement and without such an agreement or some other fixed-term or tenure employment contract the employees of the union are merely employees at will and can be fired without a showing of good cause.

AFFIRMED.