Anthony BROWN, Plaintiff,

v.

**LOCAL 701 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

No. 97 C 5872.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 13, 1998.

Michael G. Swiatek, Chicago, IL, for Plaintiff.

Steven F. McDowell, Arnold & Kadjan, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Anthony Brown ("Brown") sued Local 701 of the International Brotherhood of Electrical Workers ("Local 701"), of which he is a member, for allegedly failing to refer him for work in a fair and nondiscriminatory manner. He asserted claims of breach of contract, breach of the duty of fair representation and violation of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 431. The defendant has moved to dismiss the first two claims in their entirety

on several grounds and to strike the request for damages and the jury demand as to the last claim. For the reasons set forth in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts

Brown had worked as an electrician in various non-union shops for ten years when, in 1988, Local 701 solicited his membership. He was told by Local 701's representative that if he joined the union he would receive sufficient training to attain journeyman wireman status in accordance with applicable membership rules. So Brown joined.[1]

Local 701's relationship with its members is governed by three contracts. One is the Constitution of the International Brotherhood of Electrical Workers (the "International Constitution"), an agreement between the international union and its locals. Another is the by-laws of Local 701 itself (the "Local By-Laws"). And the last is the collective bargaining agreement ("CBA") between one or more employers and Local 701. Local 701 administers an exclusive hiring hall in its jurisdiction for all electrical contractors who are members of the National Electrical Contractors Association ("NECA") or are signatories to the CBA.

The CBA classifies electricians in Local 701 in four groups on the basis of, among other things, experience, hours worked within Local 701's jurisdiction and passing a journeyman wireman's examination. Work referrals are first made from the "out of work" list for Group I. Once that list is exhausted, referrals are then made from Group II, Group III and lastly from Group IV. An out-of-work member of a higher group is always preferred over a member of a lower group for any work referral. Group IV is comprised of the least experienced members, Group III of more experienced members, Group II of those who have had both two additional years of experience and have passed a journeyman wireman's examination, and Group I of those who additionally have

---

1. Brown alleges that he has always paid his dues and fulfilled all other obligations of membership.

(Compl., ¶ 6.)

spent one year working within Local 701's jurisdiction.

When Brown joined in 1988, he was classified as an "inside wireman." Although he had never taken a proficiency examination, he was referred out for work and paid wages and benefits similar to those of a full commercial journeyman wireman. While so classified, he earned an average of approximately $40,000 per year. In 1990 he was reclassified as a "Journeyman Wireman P.E." ("J.W.P.E."), which he was told meant "Journeyman Wireman Pending Examination." Once again he was given no examination. Local 701 told him that as a J.W.P.E. he could be referred out to work through their apprenticeship program prior to Group II workers even though he was not enrolled in the apprenticeship program. Thereafter, Brown's referrals were less frequent and of shorter duration than before. From about June 1992 to June 1993, he received only two referrals totaling approximately 420 hours. When he asked about the lack of referrals, Local 701 told him that the Group I out-of-work list had to be exhausted before he could receive a referral.

Beginning in 1991 Brown asked to be enrolled in training classes but was told the waiting list was four years long. He later learned that the classes were designed to train residential wiremen (who were covered by a different CBA) into commercial journeyman wiremen.

In 1992 Brown was finally given a proficiency examination but failed. During the next three years he took the exam four additional times and failed each time. In each instance he was told only that he had failed. He was never permitted to review the exams, he was never informed of his areas of deficiency, and he was never provided with training to improve his skills.

In late spring 1993 Local 701 advised Brown that there was no work for him in its jurisdiction. It suggested he seek work through Local 68 in Denver, Colorado. He understood that his employment had been worked out through the two locals, so he reported to Local 68 in May 1993. But instead of receiving work referrals, Brown was informed that Local 68 would not recognize his classification of J.W.P.E. It therefore placed him in Group IV for work referrals. Brown alleges that he and his wife had left their home in Illinois with most of their belongings and that he was essentially out of work. By necessity, he states, they moved in with his wife's parents in eastern Kentucky.

For the next two years Brown found work through locals in Kentucky and West Virginia by not disclosing his J.W.P.E. classification unless asked. He regularly called Local 701 to ask about his prospects for referrals if he should return to its jurisdiction and to learn when the next proficiency exam would be given. From June 1993 to June 1995 Local 701 informed Brown that there was no work available for him in its jurisdiction. In April 1996 Brown passed a proficiency examination given by Local 701 and was reclassified as a journeyman wireman.

Pursuant to the International Constitution and the Local By-Laws, Brown complained to the International Vice President of the Sixth District of the International Brotherhood of Electrical Workers ("Sixth District") that Local 701's actions and omissions had violated the CBA. He also requested documents such as work referral and proficiency exam records from Local 701 and asked for the Sixth District's help in obtaining them. The Sixth District denied him relief on both his complaint and his document request. He appealed first to the International President, who denied his appeal, and then to the International Executive Council. He was informed on June 12, 1997, that the International Executive Counsel refused to consider his appeal. His request for documents was never addressed during the appeals process.

Brown asserts that Local 701 breached the International Constitution, the Local By-Laws and the CBA by failing to administer properly the competency and proficiency examinations and failing to classify him properly for work referrals. He alleges that from 1991 to 1995 he lost $100,000 of income as a result and that he spent $8,000 on his failed move to Denver. He also alleges that he lost the value of various benefits he would have been entitled to if he had properly received work referrals.

Brown filed this action on August 19, 1997. He asserts a claim of breach of contract based on the International Constitution, the Local By–Laws and the CBA (Count I), a claim of breach of the union's duty of fair representation based on the Local By–Laws and the CBA (Count II), and a claim of violation of the LMRDA based on the denial of his document request.

### Discussion

Local 701 challenges Brown's claims on several grounds. It contends that there is no subject matter jurisdiction over Count I to the extent that it is based upon breach of the Local By–Laws. It also argues that both Counts I and II are time-barred under the six-month statute of limitations it asserts is applicable. In addition, it says, those two counts should be dismissed because Brown failed to allege that he exhausted his remedies under the CBA. And finally it asserts that the request for damages and jury demand must be stricken as to Count III for lack of causation or, in the alternative, that Brown cannot recover damages for conduct occurring prior to November 1994.

Although Local 701 brought this motion as one to dismiss and strike under Fed. R.Civ.P. ("Rule") 12(b)(6) and 12(f), both sides have submitted affidavits on the issue of whether Brown's claims in Counts I and II are time-barred. Because we have considered those exhibits, which go beyond the pleadings, we convert it to one for summary judgment on the statute of limitations issue only. No evidence has been submitted by either party as to the other issues, which are entirely distinct from the timeliness question, and so we treat them as a motion to dismiss.

### I. Subject Matter Jurisdiction

Even before we reach the statute of limitations issue, we must address whether we have subject matter jurisdiction over Count I. Local 701 makes a two-pronged argument. First, it argues that under *Korzen v. Local Union 705, Int'l Bhd. of Teamsters,* 75 F.3d 285 (7th Cir.1996), we lack federal jurisdiction over the claim to the extent that it relies upon the Local By–Laws. (The argument does not reach the allegations in Count I that Local 701's conduct breached the International Constitution and the CBA.) Second, it contends that Brown's state law breach of contract claim based upon the Local By–Laws is preempted because its resolution necessarily requires interpretation of the International Constitution and the CBA. Brown responds that while he could not bring claims under the Local By–Laws or the CBA alone, he can do so under our supplemental jurisdiction if they are coupled with a claim for breach of the duty of fair representation brought under § 301 of the Labor Management Relations Act (" § 301") or are derivative of a claim contending that local union conduct breached a provision of its international constitution such as that in *Wooddell v. International Bhd. of Elec. Workers,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). He distinguishes *Korzen* on the grounds that the plaintiffs there, terminated union employees who sued as union members over their terminations, failed to connect their employment claims to their *Wooddell* claims.

Brown misreads the scope of *Wooddell,* which addressed only whether a union member could sue his or her union for breaching the union's international constitution, not whether a claim of breach of local by-laws was within the jurisdiction of the federal courts. 502 U.S. at 99–102. In that case the Supreme Court reasoned that the international constitution of a union, as a contract between the international organization and its locals, is a contract between two labor organizations within the meaning of § 301. *Id.* As a result, the Court held, while an individual union member was not a signatory to the contract, he or she was a third-party beneficiary of it and was therefore entitled to sue under it in federal court for breach of contract. *Id.*

Similarly, Brown misreads *Korzen* as finding federal question jurisdiction over a claim of breach of a union local's by-laws where that claim was derivative of a *Wooddell* claim. *Korzen* contains no discussion of "derivative" claims at all. Rather, it holds that because local by-laws (which are contracts between a union and its members) are neither a contract between two labor organiza-

tions nor between an employer and a labor organization as required by § 301, ·a suit based on local by-laws alone cannot be sustained under § 301. 75 F.3d at 288 ("A suit on a contract between a labor organization and a member is not within the scope of section 301.") On that basis, it concluded that a claim based on a breach of local by-laws "is a straightforward claim of breach of contract under state law." *Id.*

■ Local 701 is correct that under *Korzen* we lack federal question jurisdiction over Brown's claim of breach of the Local By–Laws contained in Count I, for that is a state law claim. However, we may have supplemental jurisdiction over it. Local 701 contends that the state law claim is preempted because it requires interpretation of the International Constitution and the CBA. At this stage of the proceedings, that fact is not apparent. Brown may be able to state a breach of contract claim based on the Local By–Laws that is entirely separate from the International Constitution and the CBA, and deciding now whether his claim is preempted would be premature. Brown is given leave to amend his complaint to add a state law breach of contract claim based on the Local By–Laws if he is able to do so. Local 701 may renew its preemption challenge at a later date if that amendment is made.

■ Local 701 fails to raise an additional flaw in Count I. Brown alleges that the union engaged in unfair hiring hall practices. As to the CBA, that claim constitutes a breach of the union's duty of fair representation. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 922 (7th Cir.1991), *cert. denied*, 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d·651 (1992). This Court has found no case permitting a *Wooddell* breach of contract action against the union based on a collective bargaining agreement rather than an international constitution. Consequently, the allegations in Count I regarding the CBA

must be stricken. Brown has separately brought a breach ·of the duty of fair representation claim in Count II.[2]

## II. *Statute of Limitations*

■ We have converted Local 701's motion to dismiss into a motion for summary judgment on the issue of the timeliness of Counts I and II. Fed.R.Civ.P. ("Rule") 56(c) permits the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court may neither weigh the evidence submitted by the parties nor determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir.1992).

Local 701's timeliness challenge raises two questions: what limitations periods should apply to Counts I and II, and when did Brown's claims in those counts accrue? We address the former question first. Local 701 contends that Counts I and II are barred by the six-month statute of limitations held applicable to hybrid § 301 claims in *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed:2d 476 (1983).[3] As to Count II, recognizing that it is not a hybrid § 301 claim, they argue that it should be viewed as a "pure" breach of the duty of fair representation claim. Because the Seventh Circuit applied the six-month limitations period to a fair representation claim against a union based upon discriminatory job referral practices in violation of the CBA in *Daniels*, 945 F.2d at 922, Local 701 asserts that that limitations period must be applied to

---

2. Similarly, Brown has included allegations of breach of the Local By–Laws in his breach of the duty of fair representation claim in Count II. This Court has found no cases permitting a such a claim to be based on anything other than a collective bargaining agreement. As a result, the allegations in Count II as to the Local By–Laws are also stricken.

3. A "hybrid" § 301 claim is one brought by a union member against his employer for breach of the collective bargaining agreement and against his union for breach of the duty of fair representation. *See, e.g., DelCostello*, 462 U.S. at 163–64.

Count II. As to Count I, Local 701 acknowledges that the Seventh Circuit has not addressed the issue of the limitations period applicable to a *Wooddell* claim. But, it asserts, that period should be six months as well. It argues that in *Local 100A v. John Hofmeister and Son. Inc.*, 950 F.2d 1340, 1346 (7th Cir.1991), the Seventh Circuit applied a two-step analysis to determine whether the *DelCostello* six-month period should apply. That analysis inquires first whether there is a closely analogous state cause of action, and second whether federal labor policy or the practicalities of federal litigation make the federal limitations period significantly more appropriate. *Hofmeister*, 950 F.2d at 1346. According to Local 701, the application of that analysis to Brown's *Wooddell* claim should result in the conclusion that the six-month period applies.

Brown makes a two-pronged response. First, he argues that his allegations must be read to set forth continuing practices by Local 701 that are still occurring, or in other words, a continuing violation. On this score, he has submitted his own affidavit to supplement the allegations of the complaint. Second, he argues that the proper statute of limitations is the two-year state limitations period for personal injury actions based upon *Stevens v. Northwest Indiana Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720 (7th Cir.1994).

■ The applicable limitations period for Brown's breach of the duty of fair representation claim under the CBA in Count II is indeed the six-month period used in *DelCostello*. *Daniels*, 945 F.2d at 922. Although the Seventh Circuit has not addressed the question of the limitations period applicable to a *Wooddell* claim, the Ninth Circuit has, and it has held that the same six-month period applies.[4] *Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1541–42 (9th Cir.1993), *cert. denied*, 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 385 (1994). The Ninth Circuit explained:

Although *DelCostello* did not involve a "pure" section 301 breach of contract action as is presented here, the Court did observe in a footnote that 'even if this

action were considered as arising solely under § 301 ... the objections to use of state law and the availability of a well-suited limitations period in § 10(b) [of the National Labor Relations Act] would call for application of the [Six Month Statute of Limitations].'

*Id.* at 1541 (quoting *DelCostello*, 462 U.S. at 159, n. 12). Not only are we persuaded by this reasoning, but we also agree with Local 701's argument that the *Hofmeister* analysis requires the same result.

■ Although we conclude that the six-month limitations period used in *DelCostello* applies to Brown's *Wooddell* claim in Count I, we are mindful of the fact that the Seventh Circuit has expressly applied that limitations period only to hybrid § 301 suits and breach of the duty of fair representation actions. *See, e.g., Daniels*, 945 F.2d at 922. In the case of "straightforward" § 301 suits, such as those brought by a union against an employer for breach of the collective bargaining agreement, the court has consistently borrowed the most closely analogous state limitations period. *See, e.g., Jones v. General Elec.*, 87 F.3d 209, 211–12 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996). But the Ninth Circuit has done so as well where the suit is brought by the union against the employer to enforce an arbitration award, *see, e.g., Sheet Metal Workers Int'l Ass'n, Local Union 150 v. Air Systems Engineering*, 831 F.2d 1509, 1512 (9th Cir.1987), and that fact did not prevent it from applying the six-month limitations period to a *Wooddell* claim in *Moore*. Additionally, a *Wooddell* claim to enforce a union member's rights as a third-party beneficiary to the contract between the international union and the local has far more in common with a hybrid § 301 claim by a union member against the union and the employer and a breach of the duty of fair representation claim by a union member against the union than it does with to a union's action against an employer, and the same federal policy considerations should apply to it. Hence, we think that the Seventh Circuit would follow

---

4. According to this Court's research, the Ninth    Circuit is the only one to address this issue.

*Moore* in applying the six-month limitations period to a *Wooddell* claim.

■ Brown's argument that we should apply instead the two-year state limitations period for personal injury actions to Counts I and II, as was done in *Stevens v. Northwest Indiana Dist. Council, United Bhd. of Carpenters,* 20 F.3d 720 (7th Cir.1994), does not persuade us. First, it ignores the clear precedent of *Daniels,* under which we are obliged to apply the six-month period to Count II. And as to Count I, *Stevens* is inapposite on two scores. Count I is a breach of contract claim, not a tort claim. If we were to borrow a state limitations period, it would have to be the Illinois statute of limitations on written contracts, which is ten years. 735 ILCS 5/13–206 (1997). Second, the portion of *Stevens* upon which Brown relies involved claims brought under the LMRDA, not a *Wooddell* claim. *Id.* at 726–729. There had been a claim under a *Wooddell* claim in the case, to which the district court had applied the Indiana twenty-year statute of limitations on written contracts. *Id.* at 723 n. 8. That ruling was not appealed and hence was not before the Seventh Circuit. *Id.*

■ Having decided that the six-month statute of limitations applies to Counts I and II, we must next determine when Brown's claims accrued. According to the Seventh Circuit, " '[t]he six-month period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty] . . ." ' " *Pantoja v. Holland Motor Express,* 965 F.2d 323, 327 (7th Cir. 1992) (quoting *Steffens v. Brotherhood of Ry., Airline and Steamship Clerks,* 797 F.2d 442, 446 (7th Cir.1986)). However, the limitations period is tolled while the claimant pursues formal internal union remedies. *Id.* at 328 (citing *Frandsen v. Brotherhood of Ry., Airline and Steamship Clerks,* 782 F.2d 674, 681 (7th Cir.1986)).

Local 701 contends that Counts I and II are time-barred for two reasons. First, the complaint alleges that Local 701's offending conduct occurred between 1990 and 1995 (Compl., ¶¶ 22), while the complaint was filed in August 1997. Recognizing that the limita-

tions period would be tolled while Brown pursued formal internal union remedies, Local 701 submits the affidavit of Arthur Ludwig ("Ludwig"), the business manager of Local 701, to supply the date upon which Brown initiated action under the union's remedial procedures. Ludwig attests that Brown first brought his complaint of discriminatory referral practices to the union's attention by a letter from his attorney dated September 17, 1996. Local 701 asserts that this is that first possible date upon which tolling could begin.

Brown responds by arguing that his complaint alleges a continuing violation, one that is still occurring at present. He submits his own affidavit to demonstrate the continuing nature of Local 701's wrongful acts. He also asserts that his claim did not accrue until the internal union remedies he pursued had been completed.

■ While Local 701 takes the position that the statute of limitations began to run at least in 1995, it cites to no authority that supports its implicit assumption that it is the wrongful conduct relating to the job referrals that triggers accrual. But in *Daniels,* which was also an unfair hiring hall practices case, the Seventh Circuit held that the claim accrued when the plaintiff either exhausted the union's internal grievance procedure or knew that the union would take no further action on his grievance, not when the underlying wrongful conduct occurred. 945 F.2d at 922. The Seventh Circuit explained:

Our recognition that the limitations period does not begin to run until internal union appeals are exhausted makes eminent sense. A rule that starts the clock ticking earlier would present a substantial disincentive to union members to pursue internal remedies, a result that would be entirely inconsistent with national labor policy.

*Id. Daniels* thus resolves the issue of accrual as to Count II. And, while *Daniels* did not address the accrual of a *Wooddell* claim, given that in this case Counts I and II are based on the same facts, we can see no reason to apply a different rule to Count I. Hence, as to both counts, Brown's claims accrued not when the underlying wrongful conduct occurred, but rather when he knew

he would not obtain satisfaction from the union on his complaint.

██ Brown has alleged that the union's International Executive Council denied his final appeal on June 12, 1997. That action exhausted his remedies under the International Constitution and is therefore the date upon which the statute of limitations began to run. Because Brown filed his complaint in this action on August 19, 1997, Counts I and II are timely.

### III. *Failure to Exhaust Remedies under the CBA*

██ Local 701 contends that to the extent Counts I and II are dependent upon the CBA, they are barred because Brown has not alleged that he pursued the grievance procedure contained in the CBA, a jurisdictional prerequisite to a suit to enforce the terms of a collective bargaining agreement. As we have noted, the allegations in Count I as to the CBA must be stricken, for Brown's *Wooddell* claim is limited to the International Constitution. Therefore, no CBA exhaustion requirement exists for Count I.[5] As to Count II, Brown responds only that it contains allegations of exhaustion.

██ An employee is obligated to "attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement." *DelCostello*, 462 U.S. at 163. As the Seventh Circuit has explained:

> Section 301 of the [Labor Management Relations Act] does not contain an explicit exhaustion requirement. When suing the employer or union for breach of a collective bargaining agreement, however, exhaustion is required by *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Exhaustion is required, in part, because the procedures prescribed by the collective bargaining agreement were themselves subject to the

bargaining process. In *Republic Steel* the Court found that federal labor policy favored requiring employees to "afford the union the opportunity to act on [their] behalf." *Id.* at 653. Exhaustion was found to "complement[] the union's status as exclusive bargaining representation ... [and] enhance the union's prestige with employees." *Id.*

*Fulk v. United Transp. Union*, 108 F.3d 113, 116 (7th Cir.1997). But the typical case involves the a union member's grievance regarding the conduct of the employer, not the union itself. Nonetheless, even where the union's own conduct is at issue, such as in an unfair hiring hall case, the plaintiff must have grieved the union's underlying wrongful act. *See Daniels*, 945 F.2d at 922. Brown has made no allegation in the complaint that he filed a grievance under the CBA at all.[6] As a result Count II must be dismissed.

### IV. *The Labor Management Reporting and Disclosure Act Claim (Count III)*

In Count III, Brown seeks relief under § 431 of the LMRDA (" § 431"), 29 U.S.C. § 431, based on Local 701's failure to provide him with certain records that he requested in connection with his complaint to the union in September 1996. Local 701 asserts that his request for damages and jury demand must be stricken from that count. It argues that § 431 on its face appears to permit only the entry of an order requiring disclosure of the requested documents along with an award of attorneys' fees when appropriate. It also contends that Brown cannot recover damages under § 431 because the alleged violation of the statute did not cause the injury of which Brown complains in Counts I and II, or, in other words, Local 701's 1996 denial of access to the records was not the cause in fact of its discriminatory job referral practices. Local 701 further argues that because

---

**5.** If a parallel exhaustion requirement exists as to a union's international constitution for a *Wooddell* claim, an issue not before us, it would not bar Count I, for Brown has alleged that he pursued the remedial procedure contained in the International Constitution. (Compl., ¶ 30.)

**6.** We note also that while Brown filed an affidavit to expand upon his continuing violation theo-

ry in response to Local 701's timeliness challenge, he included no additional facts therein indicating that he pursued the formal grievance procedure set forth in the CBA even though he was aware of Local 701's exhaustion argument. Because he had the opportunity to supplement his complaint and did not do so, we do not give him leave to amend on this issue.

**790**

Brown cannot recover damages under Count III, he is not entitled to a jury trial on that claim. Alternatively, it asserts that if damages are available to Brown, his recovery should be limited to conduct occurring prior to November 1994. It reasons that Illinois' two-year personal injury statute of limitations should apply to Count III, for state personal injury limitations periods have previously been held applicable to free speech claims under the LMRDA. And, by excluding the period during which Brown pursued internal union remedies, all acts occurring prior to November 1994 would be beyond the limitations period. Brown makes no response on these issues.

 We agree with Local 701 that § 431 does not appear to authorize the award of damages, only the entry of an order compelling disclosure and an award of reasonable attorneys' fees. 29 U.S.C. § 431(c). On a more basic level, however, the statute does not appear to entitle a union member to obtain the documents Brown requested from Local 701. Section 431 limits the documents that a union is required to make available to its members to those which it is required to file with the Secretary of Labor. Those documents fall into two general categories. The first is the constitution, by-laws and annual report, the latter of which must contain the information set out in § 431(a). The second is the annual financial report. Members are also entitled to the disclosure of documents upon which statements contained in the annual and financial reports are based. But the statute allows access only to the documents enumerated therein; it is not an entitlement to discover every document a union prepares or maintains. No provision of § 431 appears to permit a union member access to competency and proficiency examinations and out-of-work logs, the only documents Brown has alleged that he requested. (Compl., ¶ 32.) This Court has found no authority interpreting § 431 as requiring such disclosure. Count III must therefore be dismissed with prejudice because it does not state a claim cognizable under § 431.

### Conclusion

On the statute of limitations issue only, Local 701's motion to dismiss and strike is converted to a motion for summary judgment, and it is denied. The remaining issues are treated as a motion to dismiss. Count II is dismissed with prejudice for failure to exhaust the remedies under the collective bargaining agreement. Count III is dismissed with prejudice because it does not state a claim cognizable under 29 U.S.C. § 431. Brown is given leave to amend his complaint to add a state law claim for breach of the Local By–Laws if he can do so consistent with Rule 11. That amendment must be made within 45 days of the date of this opinion.