In the
# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2006

Charles R. Fulbruge III
Clerk

m 05-30624

DAVID LEE; KEVIN DUGAS; WAYNE CARBO;
CESHA JOHNSON; CHRISTOPHER VICTORIANO,

Plaintiffs-Appellants,

VERSUS

CYTEC INDUSTRIES, INC.;
PAPER, ALLIED-INDUSTRIAL CHEMICAL AND ENERGY WORKERS
INTERNATIONAL UNION, AFL-CIO-CIC, LOCAL 4-447;
ALLIED-INDUSTRIAL CHEMICAL AND ENERGY WORKERS
INTERNATIONAL UNION, AFL-CIO-CIC,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
m 2:03-CV-3176

Before SMITH, GARZA, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge.

Cytec Industries ("Cytec") closed its Am-monia Unit in June 2001. Cytec and its union agreed on the re-arranging of employees after the closing based on the Collective Bargaining Agreement ("CBA") and seniority rights. In July 2001, the final bumping sheet was posted by Cytec on bulletin boards at the relevant fa-

cility. David Lee, Kevin Dugas, Wayne Carbo, Cesha Johnson, and Christopher Victoriano sued on November 12, 2003, alleging breach of contract claims against Cytec, breach of fair representation claims against the union, and several other claims based on their displacement and/or recall rights. The district court granted summary judgment for the defendants. We affirm.

## I.
### A.

Plaintiffs argue that the district court erred in holding that the statute of limitations in a hybrid section 301 lawsuit starts to run when the employees knew or should have known of the union's breach.[1] Plaintiffs contend instead that the statute runs from when they knew or should have known that the union would no longer process their grievances. This oversimplification of the district court's decisions is misleading.

That court did note, with respect to plaintiffs' *displacement* claims, that under the law of this circuit, limitations started running when plaintiffs knew or should have known of the union's breach of their rights, namely with the publication of the July 2001 bumping orders according to which plaintiffs were to be displaced, an event akin to the adoption of a new seniority system.[2] But the court acknowledged, with respect to claims arising in the non-grievance context, such as the claim challenging the adoption of the bumping sheet (as opposed to grievance-related claims challenging how the union processed a particular grievance), courts have held that the statute was equitably tolled for the duration of the grievance proceedings until the employees knew or should have known that the union would no longer process their grievances. *See Adkins v. Int'l Union of Elec., Radio & Machine Workers*, 769 F.2d 330 (6th Cir. 1985) (holding that the employees' good-faith attempt to exhaust their internal contractual remedies through the grievance process will prevent the accrual of their action).[3]

The district court obwerved, however, that those cases are distinguishable because they in-

---

[1] Hybrid suits, such as this, formally comprise two causes of action. First, the employee alleges that the employer violated § 301 of the Labor Management Relations Act ("LMRA"), 61 Stat. 156, 29 U.S.C. § 185, by breaching the collective-bargaining agreement. Second, the employee claims that the union acted in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation.

---

[2] *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (holding that any claims based on the allegedly unlawful adoption and subsequent applications of a seniority system accrued when the employee knew of the breach of the CBA, namely of the new seniority system, "regardless of when the effects of such system are actually felt"); *Barrett v. Ebasco Constructors*, Inc., 868 F.2d 170, 171 (5th Cir. 1989).

[3] As the district court explained, a claim for breach of duty of representation in the adoption of a new seniority system or a bumping sheet does not arise in a grievance context, because it does not challenge discriminatory conduct in the application of the grievance procedure. *See also Adkins*, 769 F.2d at 336 ("Certainly, the typical hybrid claim is based on the union's failure to properly process a grievance, so nonjudicial enforcement has already failed. But where the union's alleged breach of duty is in a nongrievance context, as here, the employees' good-faith attempt to exhaust their contractual remedies will prevent the accrual of their action.").

2

volved situations in which a grievance was filed with the union within six months of the breach of the CBA. The court held that these cases are inapplicable here, because plaintiffs have not filed *grievances* with the union regarding their displacements within six months of July 2001, when the violation of the CBA occurred.

Plaintiffs argue that the district court erred, nonetheless, because for tolling to apply, there is no requirement that a grievance must be filed with the union within six months of the breach. The courts are split on the issue, however, and this appears to be an issue of first impression in this circuit.[4]

We agree with the district court and the other courts that have held that to invoke equitable tolling, an employee must file a grievance with the union within six months of the adoption of a new seniority system. Equitable tolling is an exception to the general rule that an employee has six months to sue from the discovery of the breach of the duty of fair representation. The rationale for it is that because some plaintiffs must exhaust internal contractual remedies (*e.g.* the grievance process) before suing, it would be unfair to say that the plaintiffs' claim is barred by limitations if, while the grievance is pending,

the six-month federal statute of limitations expires.[5] We conclude, however, that this exception to the general accrual rule could not confer more rights than those that plaintiffs would have if they were not entitled to this exception, that is if plaintiffs did not have to exhaust internal remedies.

In other words, plaintiffs cannot wait until the statute of limitations for a federal lawsuit has passed and then file a grievance to circumvent the applicable six-month statute. This is especially so given that the six-month limitations period under federal law is an extension of the time period provided by many state statutes.[6]

Furthermore, because federal law favors early resolution of labor disputes, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 168 (1983), tolling is applicable only for a "good faith" attempt to pursue non-judicial remedies, *Adkins*, 769 F.2d at 335 ("[T]he employees' good-faith attempt to exhaust their contractual remedies will prevent the accrual of their action."). Here, the lack of good faith is demonstrated by the fact that the grievance was not filed within the 10-day period required by the CBA.[7] But even if the CBA allowed eight

---

[4] *Compare Whittle v. Local 641, Int'l Bhd. of Teamsters*, 56 F.3d 487, 490 (3d Cir. 1995) (rejecting the holding that the failure to file either a grievance or a legal action within six months of the date plaintiffs discovered the violation of the CBA made their federal suit untimely) *with Long v. Gen. Motors Corp.*, 19 Fed. App'x 200, 203 (6th Cir. 2001) ("But the Complaint clearly reflects that the plaintiffs made no attempt to initiate a formal grievance until 1994, after the six-month statute had run. Because the plaintiffs waited beyond the six-month time period to invoke their formal contractual remedies, they cannot benefit from the late accrual rule.").

[5] *See, e.g., Frandsen v. Bhd. of Ry., Airline & S.S. Clerks*, 782 F.2d 674, 681-84 (7th Cir. 1986).

[6] *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks*, 782 F.2d 674, 681 (7th Cir. 1986) ("*DelCostello*'s six-month statute of limitations lengthened the amount of time a worker had in most states to file a claim in court after exhausting internal union appeals.").

[7] For the reasons stated by the district court, we reject defendants' contention that the grievance must be filed within the period prescribed by the CBA (continued...)

3

months to file such a grievance, a plaintiff who waits until the seventh month to bring such a grievance waives his right to the federal action, which must be brought within six months.

We also reject plaintiffs' contention that events that occurred after June 2001 changed the announced displacements and re-started the limitations period. As the district court explained, there is no evidence that plaintiffs were told in June 2001 that the announced displacements were tentative. To the extent that a claim for the failure to account for resignations in the implementation of the bumping sheet did accrue later, that claim fails because it does not represent a breach of the duty of fair representation, as we will explain in part II.B., *infra*.

### B.
With respect to the *recall* claims, the district court found that only Johnson's and Victoriano's were not barred by the statute of limitations. It held that plaintiff Carbo's recall claim was barred by limitations because he did not sue within six months of November 15, 2002, when he received notice that his grievance was denied; thus he knew or should have known that the union would not take any further action on his grievance without some action on his part. Plaintiffs challenge the finding that Carbo's claim was untimely, arguing that the union had notice of his claim. We do not see how this affects in any way the fact that under the law, Carbo had to sue within six months of the time it became obvious that the union had rejected his claim.

Plaintiffs also urge that the union could not have rejected Carbo's claim without a vote of the membership. But, once a grievance is rejected at an early stage, the grievant must self-process that issue for it to reach a vote of the membership. As the district court indicated, there was no evidence that Carbo attempted to reach the voting stage on his own after November 15, 2002. Therefore, the district court correctly held that Carbo's recall claim was barred because he did not sue within six months of November 2002.

The court also found that Lee's recall claims were barred because he did not sue within six months of December 2002, when Wade Gilbeau (the union-Cytec group chairman) told him that a grievance already in existence (No. 01-36) would not benefit Lee. Plaintiffs claim nonetheless that this grievance does benefit Lee.

But, if the grievance benefits Lee, and is currently in arbitration, then Lee cannot file this lawsuit until the arbitration ends, because he is not complaining about the arbitration proceedings. Only if the grievance does not benefit him can Lee claim a breach of the duty of fair representation, but in that case, he is barred by limitations, as found by the district court. Carbo's claim about grievance No. 01-36 fails for the same reasons.

### II.
### A.
Plaintiffs dispute the district court's finding that the union did not act arbitrarily or in a discriminatory or bad faith manner against Johnson and Victoriano. They had argued in the district court that the union breached its duty of fair representation by delaying processing their grievances. That court held that no breach had occurred, finding that such delay was common

---

[7](...continued)
(here 10 days). Failure to file within the period prescribed by the CBA, however, can be relevant to the issue of "good faith."

and that the union has taken steps to pursue plaintiffs' grievances and will continue to so.

Plaintiffs aver that whether the delay was common is a disputed issue of material fact for the jury and that the district court weighed evidence and made impermissible credibility determinations. They insist the court erred in relying on Gilbeau's testimony that the delay was common and a result of the policy of giving priority to discharge-related grievances over those that did not involve termination. They also claim that the record included evidence that contradicted Gilbeau's testimony. In support of the "contradiction" they cite only the fact that grievance No. 01-36 reached a third-step meeting in less than ten months.

This fact does not "contradict" Gilbeau's testimony. As the district court explained, the union asserted that the delay was common and that many grievances filed in 2002 and 2003 were still awaiting arbitration, and that non-discharge grievances commonly take over a year to be put to the vote of the membership. That is, the fact that several non-discharge grievances such as grievance No. 01-36 were sent to arbitration in about a year does not contradict the fact that "many" such discharges were still awaiting arbitration, and that "commonly" it took over a year for a dispute to be voted to arbitration.

There is no credibility determination here: Even if the facts alleged by the plaintiffs are true, they still are unable to refute the union's statement that delay was common. Because plaintiffs had the burden of proving that the delay was arbitrary, discriminatory, or in bad faith, as opposed to "common," summary judgment was appropriate.

Plaintiffs devote another section of their brief to arguing that the union breached its duty of fair representation because it never "fully processed" any of the grievances involving displacements. This allegation seems to be another version of the "arbitrary and discriminatory" delay argument described above. But the evidence indicates that the grievances were in fact being processed, albeit with a delay. Therefore, this claim fails for the same reasons that the "delay" claim fails.

Moreover, even if the claim is recast as arguing that the union discriminated against "displacement" claims by purposefully delaying them in favor of "discharge" claims,[8] such conduct was not unreasonable or irrational. Rather, the union acted on the relevant consideration of giving priority to those who would suffer the mostSSdischarged employees.

B.

Appellants argue that the union breached its duty of fair representation by impairing the seniority rights of "Carbo, Victoriano and Dugas[9] by failing to follow its unlawful 2001 bump order and allowing employees with less seniority to earn higher wages." As discussed, of the three, only Victoriano's recall claims are not barred, and plaintiffs fail to brief, in this section, how Victoriano's seniority rights were impaired.

Even assuming that this claim was not

---

[8] We do not address the issue of whether such a generalized claim that all "displacement" grievances were delayed satisfies the requirement that claims for breach of duty of fair representation must show that the plaintiff was singled out for discriminatory treatment.

[9] Dugas does not allege any breaches of the CBA after his displacement.

waived for want of briefing, it fails for two reasons. First, the evidence shows that Victoriano was displaced from his Warehouseman job by Tamplain, who was more senior than he was, because she had a badge number of 3011 and Victoriano's badge number was 3086.

Second, Victoriano's complaints with respect to less senior employees working in higher paying jobs were about Breaux (badge 3083), Toups (badge 3082), Dunham (badge 3087) and Higginbotham (badge 3092), of whom in fact only Dunham and Higginbotham were less senior than was Victoriano. Even the claims based on Dunham's and Higginbotham's higher pay fail to show arbitrary and discriminatory action against Victoriano. Rather, the record shows that Higginbotham and Dunham were able to "recall" into their Warehouseman jobs because the more senior employees who were supposed to displace them based on the July 2001 bumping sheet resigned.

Plaintiffs claimed throughout the proceedings that not revising the July 2001 bumping sheet to account appropriately for the resignations was an "error." But a failure to account for resignations to modify the bumping sheet, even assuming it was erroneous, shows only negligence, applicable to all who were affected by this failure, not intentional and invidious action targeted at Victoriano. The duty of fair representation is not breached by mistakes in judgment or less than perfect conduct by the union.[10] Without more, Victoriano fails to

make a claim for discriminatory and arbitrary conduct that impaired his seniority rights.[11]

---

[10](...continued) its duty of fair representation"). Furthermore, the union's interpretation is not necessarily mistaken or unreasonable. As plaintiffs admit, article 18.4 provides that an employee displaced by a unit closing has recall rights to "his" job before other employees are allowed to bid for the position.

Therefore, it is not unreasonable to interpret this provision as indicating that Dunham and Higginbotham, displaced on the bumping sheet by more senior employees, had a right to recall to their jobs when these senior employees resigned, before Victoriano was allowed to bid for them. That is, Victoriano did not have recall rights to Dunham's and Higginbotham's jobs, but only bidding rights.

[11] Plaintiffs also argue that the union breached its duty of fair representation because it acted contrary to its memberships' interests. In support of this claim, they cite several cases but fail to explain in any manner what the union did to be deemed to act "contrary to its memberships' interests." Thus, this half-page claim is waived for failure to brief adequately.

In another subsection devoted to the breach of the duty of fair representation, plaintiffs also argue that the union ignored its internal rules by "disregarding the concerns of a large percentage its [sic] membership." Plaintiffs fail to cite any law for this argument, so it is also waived for inadequate briefing.

This argument is also very vague. It appears that it relates to Gilbeau's denial of a special meeting, despite the fact that a written demand was signed by ninety two members. Plaintiffs do not state, however, which "internal rule" was violated by this denial.

---

[10] *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989); *Pease v. Prod. Workers Union*, 386 F.3d 819, 824 (7th Cir. 2004) (finding that union can be mistaken in its understanding of the collective bargaining agreement with respect to seniority rights "without departing from
(continued...)

C.

Because, as we have explained, the local chapter of the union did not breach its duty of fair representation with respect to any of plaintiffs' timely claims, there is no breach that could be attributed to the International Union. Therefore, the district court correctly dismissed the claims against the International Union.

III.

Plaintiffs contend the district court improperly dismissed their "breach of contract" claim against the union, a breach that involves the local's constitution and bylaws. In their complaint, plaintiffs did not specify what state law claims they were asserting, nor did they mention any provision of state law in any of the counts of the complaint. Additionally, they did not respond to the portion of Cytec's motion for summary judgment asking for dismissal of the state law claims because they were vague, inadequately pled, or preempted by section 301 of the LMRA. Therefore, the state law claims against the union are waived for appeal purposes.[12]

Even assuming, *arguendo*, that the breach of contract claims are not waived, the district court did not err in finding that they are preempted by section 301 because they are "inextricably intertwined" with the CBA and hinge on an interpretation of the CBA. The only case plaintiffs cite in support is from another jurisdiction and is inapposite. Although *Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 289 (7th Cir. 1996), which they rely on, held that claims for a violation of a local's constitution arise under state law, it did not hold that claims arising under state law could not be preempted by section 301.

Nor could the *Korzen* court have even addressed the issue of whether the claim for breach of the union's constitution in that case was intertwined with the CBA, given that the plaintiff was an employee of the union, so the CBA did not apply to her. *Id.*

IV.

Plaintiffs claim on appeal that the union violated section 101(a)(2) of the LMRDA.[13] In support, they allege that the local union president, Brent Petit, on hearing complaints about the 2001 bump procedure, suggested that the complaints be brought in a different forum, namely the Cytec group meetings, and "asked Victoriano whether he wanted to file charges against Gilbeau, but warned that if those charges were unwarranted, Victoriano would be kicked out of the union."

Plaintiffs reason that this constituted a threat of reprisal for voicing complaints over the union's behavior, or at least constituted "union conduct that inhibits or threatens dissenting speech," which they claim is prohibited by section 101(a)(2) of the LMRDA. In support they only cite a case from another circuit. Because they have not raised this LMRDA claim in their complaint or before the district court, it is waived: In their amended complaint, plaintiffs allege jurisdiction pursuant to the LMRDA, but they do not cite any specific provision of the LMRDA that was violated, nor do they reference the LMRDA anywhere other than in the

---

[12] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) (explaining that we will not consider arguments not presented to the district court).

[13] Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), Pub. L. 86-257, 73 Stat. 522, § 101(a)(2), 29 U.S.C. § 411(a)(2).

jurisdictional statement. They do not even mention the alleged incident or any other incident involving "threats" of reprisal for voicing concerns. Further, they have not specifically alleged any violation of § 101(a)(2) of the LMRDA and have not devoted any section or portion of their memorandum opposing the motion for summary judgment to describing their LMRDA claims or to briefing the district court on why summary judgment was inappropriate on those claims.[14]

For the same reasons, we also reject plaintiffs' argument that the union violated the LMRDA when Petit "chose to ignore Victoriano's pleas and stifled any other complaints with threats of reprisals."[15] Although in the paragraph making this statement, plaintiffs describe that Petit denied that he received a request for a meeting signed by ninety-two union members, we do not understand how the statement that he had not received a petition amounted to "threats of reprisal."[16]

The judgment is AFFIRMED.

---

[14] Plaintiffs mentioned, in their memorandum opposing the motion for summary judgment, that Petit told Victoriano that if unsubstantiated charges were brought against Gilbeau, the charger faced exclusion from the union. This was described in a section labeled "Victoriano's Grievance." But, plaintiffs never alleged that this act constituted a violation of the LMRDA, or briefed the district court on any law that would suggest that this is a violation of the LMRDA. Therefore, the issue of why these alleged threats violate § 101(2) of the LMRDA is waived for appeal purposes. *See Little*, 37 F.3d at 1071 (explaining that we will not consider arguments not presented to the district court).

[15] This argument is also unsupported by the record. There is no evidence that anyone other than Victoriano was allegedly threatened with reprisal, and plaintiffs' brief does not cite to the record in support of this statement.

[16] In the remainder of the section of their brief dedicated to the LMRDA, plaintiffs refer to events that they allege demonstrate "inaction" and "arbitrary conduct" toward their grievances. They do not brief us, however, on why this would be a violation of the LMRDA as opposed to a mere breach of the duty of fair representation. Even if these claims did state a claim for a violation of the LMRDA, they would be waived because they were not properly before the district court, as we have explained.