In the Matter of R.C.P., a minor child.

Henry George Juan, Jr., Petitioner,

v.

Leon Wallace, Juvenile Officer for Jasper County, Missouri, and Glenn R. Gulick, Jr., Respondents.

No. 23290.

Missouri Court of Appeals, Southern District, Division One.

Oct. 17, 2001.

L. Thomas Elliston, Elliston Law Offices, Webb City, for Petitioner/appellant.

Laura Higgins Tyler, Morrison & Hecker L.L.P., Kansas City, for respondent Gulick.

PER CURIAM.

A petition for habeas corpus was filed in this court by the natural father ("Petitioner") of R.C.P., a male, then six (6) years of age, who Petitioner alleged was presently in the physical custody of his maternal grandfather ("Respondent Gulick") and was being illegally restrained from the custody of Petitioner. The petition also sought an order directed to Leon Wallace ("Respondent Wallace"), juvenile officer for Jasper County, Missouri, to release R.C.P. to Petitioner. Petitioner's claim to legal custody was based upon a judgment rendered in the State of Louisiana on July 30, 1999, granting him permanent and sole custody of the minor.

On March 28, 2000, this court, deeming the allegations of Petitioner's petition sufficient for further inquiry, issued its writ and ordered both respondents, without producing the person of R.C.P. until such time as the same may be ordered by the Court, to answer the petition. On April 5, 2000, Respondent Wallace filed his answer. On April 10, 2000, a Master was appointed to hear all evidence relating to the issues in this proceeding and to prepare a report upon matters submitted by the order, including findings of fact and conclusions of law. On April 13, 2000, Respondent Gulick filed his answer to the petition.

The facts leading to the filing of the petition for habeas corpus are set forth in the report of the Master as follows:

[R.C.P.] (child) is the son of petitioner and Glenda Michelle Perry. Respondent Gulick is the father of Glenda Michelle Perry and is the maternal grandfather of the child. Respondent Wallace is the Juvenile Officer of Jasper County, Missouri.

The child was born out of wedlock in Slidell, Louisiana, while both parents were residents of Louisiana. The moth-

er's then husband was named on the birth certificate as the father of the child; but petitioner is the father, and the former husband has not participated in the custody proceedings.

At the time of the birth, petitioner and the mother were not living together; petitioner was living in New Orleans, and the mother was living in Metairie. Shortly after the birth, the mother moved into petitioner's apartment with him.

After about three months, she moved to Joplin, Missouri, and then went back to Louisiana in May of 1994. She stayed intermittently with petitioner until she moved to her own apartment in the summer of 1995. At some time thereafter, she returned to Joplin and stayed with respondent until the early part of 1996. She then returned to Louisiana and stayed with petitioner for four or five weeks. In February of 1996, she again returned to Joplin to stay until she moved to Bartlesville, Oklahoma, in October of 1996, where she became a resident. She remained in Oklahoma until she went to Louisiana in September of 1997, for a vacation and to visit her older son who was in the custody of her former husband's mother. While there, she was arrested in Jefferson Parish on October 1, 1997, on a warrant issued in Orleans Parish. While in a cell in Jefferson Parish, she called petitioner and asked him to pick up the child who was at a motel with a female friend of the mother. The mother was released from jail on October 28, 1997, when the charge of stealing a truck that was either petitioner's or under his control, was dropped. She stayed at petitioner's house for three or four days until she called the police, who took her to a shelter where she and the child were put on a bus to Bartlesville. During the foregoing periods and until March of 1998, the mother had the actual custody of the child except for four weeks when she was in jail in Louisiana and for about six weeks when the Oklahoma authorities had custody of the child.

On March 27, 1998, an Oklahoma court ordered the child returned to Louisiana where petitioner had temporary custody under a court order. The whereabouts of the mother from May until July of 1998, is not clear, although she apparently was traveling around the country. In July of 1998, she came to New Orleans, and while visiting the child, on or about July 28, 1998, she took the child without petitioner's knowledge or consent and disappeared. On July 28, 1998, the Louisiana court issued a civil warrant for the arrest of the mother. Petitioner later received a telephone call that the mother and the child were in Neodesha, Kansas. He notified the police there and they arrested the mother on January 17, 1999. The police notified petitioner that she had been arrested and that they had the child in custody. The next day, petitioner told them that he would come there and pick up the child, but they told him that the grandfather (respondent) had picked up the child and taken him to Joplin. Petitioner came to Missouri to get the child, but was unable to do so. The child has remained in respondent's physical custody since January 17, 1999.

On October 15, 1997, while the mother was in jail in New Orleans on the charge of stealing the truck, petitioner filed in the District Court of St. Bernard Parish, a petition to establish paternity, filiation, and for custody of the child. That court, after a hearing on November 7, 1997, at which the mother did not appear, placed the temporary custody of the child with petitioner.

While the mother and the child were in Bartlesville, petitioner initiated a habeas corpus proceeding in Washington County, Oklahoma. That court held a hearing on February 12, 1998, at which petitioner appeared in person and by attorney, and the mother appeared in person without an attorney. On March 27, 1998, at another hearing in which the mother was represented by an attorney, the court found that the Louisiana court had jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), and ordered the child returned to Louisiana and held in custody by the authorities there pending a hearing in the Louisiana case.

The Louisiana court granted petitioner temporary custody on April 7, 1998. It held a hearing on July 30, 1999, at which petitioner appeared in person and by his attorney, and the mother appeared in custody and by her attorney, who had been appointed that morning. That court granted petitioner permanent and sole custody, and then stated: "I guess the forum is in Missouri after this, but, we'll see...."

Respondent was not a party to either the Oklahoma case or the Louisiana case, although the record in the Louisiana case on July 30, 1999, reflects that respondent had actual custody of the child.

On January 19, 1999, respondent filed a petition for transfer of custody in the Circuit Court of Jasper County in case no. JU199–26. On that day, the court entered an order temporarily placing the custody of the child in respondent. On August 16, 1999, the court dismissed this case for lack of jurisdiction; and on the same day dismissed the consolidated case no. JU199–262 at the request of the juvenile officer, the petitioner in that case.

Petitioner filed a petition for writ of habeas corpus in Jasper County Circuit Court case no. CV199–1502CC, which was heard by the Honorable E. Mitchell Hough. Judge Hough signed a judgment on October 18, 1999, finding that Louisiana did not have jurisdiction under the UCCJA, and denying relief. He did not make a determination of the best interest of the child; but expressly determined that there was no just reason for delay, in an attempt to make the judgment a final judgment under Rule 74.01(b) for the purpose of appeal. Petitioner filed a notice of appeal from this judgment.[1]

A hearing was held before the Master on May 24 and 25, 2000. Petitioner introduced documentary evidence, but did not testify at the hearing. Counsel for petitioner took the position that "this is a writ of habeas corpus case and this is not a child custody case at this point. It is simply a case to see if the child is being lawfully restrained from [sic] Mr. Gulick and/or Mr. Wallace. We will not in any way ... introduce evidence and open up the issue of fitness or best interests of the child because in my opinion this is not a custody case."

Respondent Gulick presented testimony from eight witnesses at the hearing. Respondent Wallace's motion to dismiss was

---

1. Petitioner filed his notice of appeal on October 22, 1999. On February 25, 2000, Petitioner filed a "Conditional Motion to Consider this Proceeding As Certiorari, With Suggestions," which noted that appeal may not be the appropriate method of review. The motion included a request to consider the matter as a writ of habeas corpus proceeding. By order, this court invited Respondent Gulick to respond to the motion. This court granted Petitioner leave to file an original petition in habeas corpus. It is that proceeding that is now before this court.

taken with the case and his attorney excused from participating in the case. Following the presentation of evidence, the Master took the matter under advisement. On August 21, 2000, the Master filed his "Report."

The Master found that the Louisiana custody order was invalid in that Louisiana did not have jurisdiction to enter the order, and that there was no other valid order from any other court which awarded custody to Petitioner. The Master further found that the presumption that Petitioner is a fit, suitable, and able custodian of his child, and that the child's welfare is best served by awarding custody to him, was rebutted by the evidence presented at the hearing. The Master recommended that the court deny the petition for habeas corpus "because of [Petitioner's] unfitness, and to avoid potential harm to the child."

I.

■ We accord the Master's findings, conclusions and recommendations "the weight and deference given to trial courts in court-tried cases, in light of the Master's opportunity to view and judge the credibility of witnesses." *State ex rel. Busch by Whitson v. Busch*, 776 S.W.2d 374, 377 (Mo. banc 1989); *Matter of W.K.M.*, 537 S.W.2d 183, 186 (Mo.App. 1976).

Petitioner's first point asserts that he is entitled to an order granting him custody of his son "because full faith and credit must be given to the authenticated copy of the final judgment of a Louisiana court granting him custody of his son." Petitioner argues that the Louisiana custody order is presumptively valid and entitled to full faith and credit "unless there was (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the concoction or procurement of the judgment."

■ The Master's report carefully and comprehensively addresses this issue. His findings and conclusions concerning the validity of the Louisiana order are hereby adopted by this Court and set forth as follows:

The ultimate issue for decision is whether the Court should order that the custody of the child be transferred to petitioner. He maintains that this Court should give full faith and credit to the judgment of the Louisiana court that granted permanent custody to him, as required by the federal constitution, a federal statute, and the Uniform Child Custody Jurisdiction Act; that the determination by the Oklahoma court that the Louisiana court had jurisdiction, and the orders and judgments in the Louisiana and Missouri cases preclude further consideration of the jurisdiction issue; and that the issues of his fitness, and the welfare and best interest of the child should not be reached.

Article IV, § 1 of the Constitution of the United States, and 28 U.S.C. § 1738, require Missouri courts to give full faith and credit to judicial proceedings in other states unless there was (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the concoction or procurement of the judgment. *Williams v. Williams*, 997 S.W.2d 80, 82 (Mo.App. S.D.1999). A judgment of a court of another state, which is regular on its face, is entitled to a strong presumption that the court had jurisdiction over the parties and the subject matter. The party challenging the validity of the judgment has the burden of overcoming this presumption. Lack of jurisdiction may be shown, recitals of jurisdiction in the foreign judgment notwithstanding. *In re Aldridge*, 841 S.W.2d 793, 797 (Mo.App. S.D.1992). Under the UC-

CJA, jurisdiction to hear custody matters is characterized as subject matter jurisdiction which may not be waived or conferred by consent. *Lavalle v. Lavalle*, 11 S.W.3d 640, 651 (Mo.App. E.D. 1999).

The Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, requires the "appropriate authorities" of Missouri to enforce the judgment of the Louisiana court according to its terms if that court had jurisdiction under Louisiana law. *In re Aldridge*, 841 S.W.2d at 801. In order for a state court's custody decree to be consistent with the provisions of the Act, the State must have jurisdiction under its own local law, and one of five conditions set out in the Act must be met. *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), 484 U.S. 174, 175–76, 108 S.Ct. 513, 98 L.Ed.2d 512. The PKPA is an addendum to the federal full faith and credit statute, and it is intended to have the same operating effect upon child custody decrees. *Id.*, 484 U.S. at 183, 108 S.Ct. 513.

The Missouri version of the UCCJA appears in sections 452.440, et seq., RSMo. The Louisiana version, LSA–R.S. 13:1700 to 13:1724, is substantially in accordance with Missouri sections 452.440 to 452.550. Missouri section 452.500 requires this Court to recognize and enforce the Louisiana judgment if that court had assumed jurisdiction under statutory provisions similar to the Missouri act, or if it was made under factual circumstances meeting the jurisdictional standards of the Missouri act.

The provisions of Louisiana section 13:1702.A and Missouri section 452.450.1 are nearly identical. Under the Louisiana statute, an appropriate court has jurisdiction to make a child custody determination upon four bases. These bases of jurisdiction stated in (1) through (4), infra, are in descending preferential order, as the first two establish the major bases for jurisdiction. *In re Marriage of Dooley*, 15 S.W.3d 747, 755 fn. 7 (Mo.App.S.D.2000).

(1) There is jurisdiction if Louisiana was the home state of the child at the commencement of the proceeding; or had been the home state within six months before the commencement of the proceeding, and the child is absent from the state, and a parent continues to live in Louisiana.

The Louisiana court ... did not have jurisdiction over this child. Oklahoma had been the home state of the child for nearly one year before petitioner filed his first petition for custody on October 15, 1997.

(2) There is jurisdiction if it is in the best interest of the child because the child and his parents, or at least one contestant, have a significant connection with Louisiana, and there is available in Louisiana substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

Petitioner has a significant connection with Louisiana, but neither the child, the mother, nor respondent have such a connection. The only evidence available in Louisiana as to the child's care would be that of future care if petitioner is granted custody. It is not in the best interest of the child that the Louisiana court have jurisdiction.

(3) There is jurisdiction if the child is physically present in Louisiana, and has been abandoned, or it is necessary in an emergency to protect the child because he has been subjected to, or threatened with, mistreatment or abuse, or is otherwise neglected or dependent.

The child was present in Louisiana because his mother had gone there for a vacation and to visit her other child. While there she was arrested and jailed on a specious charge instigated by petitioner. While held in jail, she asked petitioner to take custody, which he did. Abandonment is a willful, positive act such as deserting the child; or willful delivery of the child with the intention that the severance be permanent; or a voluntary and intentional relinquishment of custody to another with the intent never again to claim the parental rights or duties. It can also occur if a parent intentionally withholds the care, love, protection and presence of a parent. *In re Adoption of Baby Boy W,* 701 S.W.2d 534, 543 (Mo.App.1985). The mother did not abandon the child. There is no evidence that the Louisiana court should have jurisdiction because it was necessary in an emergency to protect the child, as the child had not been subjected to, or otherwise threatened with, mistreatment or abuse, or otherwise was neglected or dependent. At this point, the father had physical custody of the child and he cannot claim that the condition of the child was such that he came within this provision of the statute.

(4) There is jurisdiction if it appears that no other state would have jurisdiction substantially in accordance with the foregoing paragraphs, or another state has declined jurisdiction on the ground that Louisiana is the more appropriate forum to determine custody, and it is in the best interest of the child that the court in Louisiana assume jurisdiction.

Subsection B. of the Louisiana statute provides that the physical presence in Louisiana of the child, or of the child and one of the contestants, is not alone sufficient under subsection A.(1) and (2). The Louisiana court did not obtain jurisdiction to make a custody determination upon any of the foregoing bases.

Until October 15, 1997, neither petitioner nor anyone else had instituted custody proceedings. The determination by the Oklahoma court that it should sustain petitioner's application for habeas corpus in Washington County, was based on its finding that Louisiana had jurisdiction pursuant to the November 7, 1997, order. It did not decline jurisdiction on the ground that Louisiana was the more appropriate forum to determine custody; nor did it declare it to be in the best interest of the child that the Louisiana court assume jurisdiction.

Louisiana section 13:709 requires that a person having physical custody, who is not a party to the custody proceeding, be joined as a party, and be notified of the proceeding and of his joinder as a party. Although it was known at the hearing on July 30, 1999, that respondent then had physical custody of the child, he was not joined as a party to the Louisiana proceeding. The judgment entered on July 30, 1999, is not binding on respondent.

The Louisiana court has not, from the beginning, had jurisdiction under Louisiana law to decide the custody of the child. It has not been in the best interest of the child that Louisiana assume jurisdiction. The federal constitution and statutes do not require that the Louisiana judgment be given full faith and credit. The court rendering the judgment did not have jurisdiction over the subject matter; notice was not given to respondent; and the judgment was procured by the fraudulent act of petitioner having the mother arrested on an unfounded charge so he could obtain physical custody of the child. Petitioner is not entitled to custody under any Louisiana order or judgment.

■ We agree with and adopt the Master's reasoning and conclusion that the Louisiana court lacked jurisdiction to enter its July 30, 1999, judgment. Petitioner is not entitled to custody of his son by virtue of the Louisiana judgment. The relief sought by Petitioner cannot be granted on this basis.

## II.

In his Point II, Petitioner claims that he is entitled to custody of his son because he is the father and that, as such, he is entitled to the benefit of a rebuttable presumption that he is a fit, suitable and able custodian of his child, and that Respondent Gulick did not rebut that presumption. The report of the Master states that "[t]he parental presumptions in favor of petitioner have been rebutted. The evidence is clear and convincing that petitioner is unfit and unsuitable to have custody of the child. The evidence is clear and convincing, and there is no doubt, that the welfare of the child requires that petitioner not be granted custody...." In his second point and its subparts, Petitioner challenges both the finding of unfitness and the determination of the welfare of the child.

■ We first observe that allegations concerning the fitness of Petitioner appear in Respondent Gulick's "Answer to Writ of Habeas Corpus," filed with this Court on April 13, 2000. The allegations also appear in Respondent Gulick's amended answer, filed with leave of the Master on May 24, 2000. The issue of Petitioner's fitness was thus properly before the Master. "[D]eterminations regarding custody, visitation, and support are not only within the scope of habeas corpus proceedings where the petitioner is alleged to be unfit, but may be necessary for resolving the basic issue of how to best serve the interests of the child, which is the 'prime and overriding consideration' in such proceed-

ings." *State ex rel. Busch by Whitson v. Busch, supra*, at 376, citing *Matter of W.K.M., supra*.

■ While it is true that "[w]here there is a valid modifiable custody order, questions of fitness of the custodian or welfare of the child are not relevant in habeas corpus," *In re Cook*, 691 S.W.2d 243, 245 (Mo. banc 1985), we have already determined that there is no valid modifiable custody order which governs this matter. Therefore, we must consider whether the Master reached the correct conclusion with respect to Petitioner's fitness, within the confines of the scope of review that applies to our examination of the Master's report.

■ As the report notes, there is a rebuttable presumption that Petitioner is a fit, suitable, and able custodian of his child, and that the child's welfare is best served by awarding custody to him. Petitioner, as the father, is not to be denied custody unless Respondent Gulick carries the burden of showing that Petitioner is unfit, unsuitable, or unable to have custody, or that the welfare of the child requires it. *Jones v. Jones*, 10 S.W.3d 528, 535 (Mo. App.1999).

■ The parental presumptions may be rebutted on the fitness basis or the welfare basis. *Id.* The presumptions are rebutted when special and extraordinary reasons mandate that custody be granted to someone other than the parent for the child's well-being, regardless of whether the evidence establishes the unfitness of the natural parent. *In Interest of Hill*, 937 S.W.2d 384, 386 (Mo.App.1997).

### Petitioner's Fitness as Parent

The report is silent as to the bases for the conclusions concerning Petitioner's unfitness and the welfare of the child. In his brief, Respondent Gulick asserts that "he

established by clear and convincing evidence that Petitioner was unfit and unsuitable." In support of that assertion, Respondent Gulick points to evidence in the record that (1) in April of 1971, Petitioner was convicted of negligent homicide, for which he served three years in a Louisiana prison; (2) in April of 1980, Petitioner was convicted of aggravated assault on a police officer, being a convicted felon in possession of firearms, and two counts of stolen property, for which he was sentenced to three years in prison; (3) in September of 1981, Petitioner was convicted of possession of blasting caps, for which he served a sentence of five years in a Texas prison; and (4) Petitioner is office manager of a club in New Orleans where patrons buy champagne to watch table dances performed by strippers. Respondent Gulick also states that he invited Petitioner by letter to visit the child in February of 1999, but Petitioner has never asked to see the child in response to the letter. Respondent Gulick further suggests that Petitioner's failure to appear and testify at the hearing before the Master gives rise to a strong presumption that his testimony would have been adverse to his position, citing *Bean v. Riddle*, 423 S.W.2d 709, 720 (Mo.1968).

■ We have combed through the voluminous record of this action, and are unable to identify any evidence, singly or collectively, which amounts to a clear and convincing demonstration of Petitioner's unfitness. The record before us reflects that Petitioner's last criminal conviction was twenty years ago, and that Petitioner completed his sentence for that conviction at least seven years before the birth of R.C.P. Respondent Gulick cites no authority, and we find none, which holds that criminal convictions of a parent render that parent per se unfit.

In fact, one case cited by Respondent Gulick, In re Interest of Hill, supra, implicitly supports the opposite conclusion. When discussing whether the circuit court improperly relied upon the father's criminal conviction in granting custody to the mother's parents, the Hill court stated, "We recognize that a parent's right to custody of his or her minor child is determined by existing conditions—past conditions are material only to the extent that they clarify and cast light on present conditions." 937 S.W.2d at 388. Hill then continued by explaining that the circuit court made only brief reference to the conviction and considered several other factors which together supported its conclusion. Petitioner's past convictions do not demonstrate that he is unfit to have custody of his son.

■ The fact that Petitioner is an office manager in a night club that serves alcohol and features exotic dancers does not render Petitioner unfit to have custody of his child. Respondent Gulick does not cite, and we do not find, authority to support a contrary conclusion. Further, the evidence presented at the hearing supported Petitioner's assertion that he did not attempt to visit or contact the child while in Respondent Gulick's custody because Petitioner and his counsel felt it was in the child's best interest. We do not consider Petitioner's refusal to engage in a "tug-of-war" over his child outside of the courtroom as an indication of unfitness.

■ Finally, Bean is of no aid to our analysis of this issue. Regardless of whether we apply the presumption set forth in Bean to hold that Petitioner's failure to testify means that "such testimony would have been unfavorable and damaging" to him, Respondent Gulick still falls far short. Respondent Gulick bore the burden to establish that Petitioner was unfit to have custody of his child. *Jones v.*

*Jones, supra,* at 535. Presuming that Petitioner's testimony would have been "unfavorable and damaging" is not tantamount to demonstrating that Petitioner was unfit.

Our examination of the record does not reveal evidence sufficient to demonstrate Petitioner's unfitness. We are, therefore, unable to agree with the Master's conclusion that the presumption that Petitioner is a fit, suitable and able custodian of his child has been rebutted. We decline to adopt that portion of the Master's report that concludes that Petitioner is unfit and unsuitable to have custody of the child.

### Welfare of the Child

Respondent Gulick urges also that he "established that there were special and extraordinary reasons that the child can and should be with Respondent [Gulick] ... even if Petitioner was a fit parent." Respondent Gulick relies on In Interest of Hill, supra, for the proposition that "special and extraordinary reasons" required custody to be granted to someone other than the parent "based upon evidence that the child was bonded to the third party, the child was very affectionate towards the third party and related to them as parents, and experts warned that removing the child from the third party would be traumatic for the child."

■ Petitioner's response to this argument is that it is not enough to show that the child is in a stable environment to establish "special and extraordinary reasons" justifying the child's continued custody with Respondent Gulick. Petitioner argues that there is no evidence that permanency and stability would not exist if the child's custody is awarded to Petitioner. Petitioner cites *Frederick v. Frederick,* 617 S.W.2d 629 (Mo.App.1981), in support of his contention that it is not proper to base a determination of custody upon the mere fact that the child is in a proven environment and " 'should not be removed from the proven environment of the grandparents to the untested environment of the mother.' " 617 S.W.2d at 637, citing *Callaway v. Callaway,* 590 S.W.2d 700, 702 (Mo. App.1979).

■ While that proposition of law is sound, there is substantial evidence in the record before us to conclude that "special and extraordinary reasons" exist which are more than simply a desire to keep the child in the current stable environment provided by Respondent Gulick over the "untested environment" of the father. Petitioner discounts the testimony of Dr. Sadie Gordon, a psychologist who works with children and adolescents. Dr. Gordon conducted a psychological examination of the child and evaluated him at the hearing before the Master. Dr. Gordon's observations concerning the child's hypervigilance and anxiety, his exhibited characteristics of a child who "has had multiple moves, stayed perhaps with multiple care takers or has lived on the street or has moved around," coupled with his adaptation to the relatively more stable environment provided by Respondent Gulick, supported her opinion that stability is particularly important for this child. Dr. Gordon testified that it would be "emotionally devastating" to transfer custody to Petitioner, especially if the child did not get the time to become familiar and comfortable with Petitioner. She further stated that moving the child and taking him out of school, away from his friends, and away from his sports activities "would destroy his trust with a lot of adults."

Contrary to Petitioner's assertions, the circumstances presented here rise above the general need for stability shared by all young children. The child involved here, as amply established by the evidence, lived a nomadic, unstable lifestyle for most of

his life before he came to reside with Respondent Gulick. The evidence supports the conclusions that the child has suffered psychologically as a result of that early lifestyle, that stability of environment is of paramount importance in the continued development of this child, and that transferring the child to Petitioner would likely cause substantial psychological harm to the child.

In so concluding, we emphasize that our decision is not based upon a comparison of available environments, whether Respondent Gulick's home is more expensive than Petitioner's, or upon the child's bonding with Respondent Gulick, to which Petitioner's counsel referred in oral argument as "child custody by adverse possession." Rather, our acceptance of the Master's conclusion is based upon the existence of substantial evidence in the record which demonstrates that, as a result of this child's early life experiences and resulting behavioral development, the welfare of the child requires that the child not be uprooted from yet another locale to be placed with someone he is not comfortable with and who resides far from the community of which he has become a part.

We agree with the Master's conclusion concerning the welfare of the child. The relief sought by Petitioner against Respondent Gulick is denied.

### III.

■ Petitioner's Point III, addressing his claim against Respondent Wallace, is premised upon the validity of the Louisiana judgment. As we have already concluded herein, that the Louisiana judgment was not valid, there is no merit to this point. With respect to Respondent Wallace, the Master concluded:

> Because the Louisiana court did not have jurisdiction under Louisiana law, neither Missouri law nor the PKPA re-

quires respondent Wallace to enforce the Louisiana judgment as an appropriate authority, or otherwise. The child is not in the custody, or under the supervision or control, of the juvenile authorities. He is not in need of such as there has been no abuse or neglect since respondent Gulick has had custody; nor has he been without proper care, custody, or support during that time. Respondent Wallace should be dismissed from the case, and his motion to dismiss is granted.

We adopt the Master's findings and conclusions on this issue and rule against Petitioner on the claims asserted against Respondent Wallace in Petitioner's Point III and subparts A through C. In accordance with the Master's recommendation, Respondent Wallace's motion to dismiss is granted.

### IV.

■ Petitioner's final point seeks an award of attorney's fees "of at least $50,000 against both respondents, jointly and severally." Petitioner's point relied on cites *State ex rel. Busch by Whitson v. Busch, supra*, as authority for an award of attorney fees in habeas actions. No authority, however, is presented by Petitioner which supports Petitioner's claim of entitlement to attorney's fees in the argument section of his brief under his Point IV. The only material cited in that section of Petitioner's brief concerns the United States Constitution's limits upon states which protect fundamental rights of parents to make child-rearing decisions.

In *Busch*, the court observed that attorney's fees typically may not be assessed in habeas proceedings. 776 S.W.2d at 378, *citing In re L.G.*, 502 S.W.2d 33, 36 (Mo. App.1973). Nonetheless, the court approved the recommendation of the Master for allowance of attorney's fees as "within

the province of the Court in the limited scope of this particularized action. . . ." *Id.* In so doing, the court noted that relator engaged in "venue shopping" and filed collateral actions in different venues which were eventually dismissed before appearing before the supreme court. The court in Busch specifically stated, "We are not suggesting and this opinion is not to be construed as precedent for the allowance of attorney's fees in habeas corpus proceedings other than child custody cases and only then as the circumstances permit." Id.

No similar circumstances exist here. Petitioner points to nothing more than a potentially misleading statement in an affidavit in support of Respondent Gulick's Missouri petition for transfer of custody, and Respondent Wallace's failure to recognize the Louisiana judgment, which, again, was invalid. These matters are not the equivalent of the actions taken by the relator in Busch, and do not warrant an award of attorney's fees.

Unlike the case in Busch, the Master in the instant case recommended that "no party be allowed an attorney fee or other expenses, and that the costs of this proceeding be charged to petitioner." We are not persuaded that the Master's recommendation denying attorney's fees should be disturbed. Petitioner's final point is denied.

The Master's Report, as modified herein, is adopted by this Court. The petition for writ of habeas corpus is denied. Our writ of March 28, 2000, is hereby quashed.