Henry A. CLAUDE, Appellant,

v.

Robert CECCARINI, et al., Respondents.

No. ED 81470.

Missouri Court of Appeals, Eastern District, Division Three.

July 8, 2003.

Jason D. Dodson, St. Louis, MO, for appellant.

Timothy C. Mooney, St. Louis, MO, for respondent.

Before MARY R. RUSSELL, P.J., CLIFFORD H. AHRENS, J., and BOOKER T. SHAW, J.

BOOKER T. SHAW, Judge.

Appellant, Henry A. Claude ("Claude"), appeals from the trial court's judgment granting Respondents', Robert Ceccarini ("Ceccarini") and Robert Tobler ("Tobler") (collectively "Defendants"), motion for summary judgment. Claude argues the trial court erred in granting summary judgment because his state law claims were not pre-empted by federal law under Section 301(a) of the Labor–Management

Relations Act of 1947, 29 U.S.C. Section 185 (1978) ("Section 301"). We agree.

At the time of these proceedings, all of the parties were members of the same union, the local chapter of the American Federation of Musicians, Musicians' Association of Saint Louis, Local No. 2–197 (the "Local"). Defendants are the only members of the partnership B & B Music Enterprises, which is engaged in the business of hiring and booking musicians. Claude is a percussionist who had previously been hired by Ceccarini, Tobler and/or B & B Music Enterprises from time to time for a period of at least fifteen years prior to November 7, 1995. In their prior dealings, Claude had canceled engagements with Defendants and provided substitute performers, including a recent substitution that Defendants found to be inadequate.

On November 7, 1995, Defendants engaged Claude for the rehearsals and performances of Disney's "Beauty and the Beast" at the Fox Theatre in St. Louis, Missouri. The production was scheduled to run from February 8 to March 10, 1996. Defendants' contractual obligation to provide musicians for this engagement did not allow the use of substitute performers for the show. Defendants felt they "could not take a chance" with Claude.

Ceccarini consulted with the President and Secretary of the Local, and subsequently interpreted the Local's By-laws to allow Defendants to terminate Claude, provided that they gave him proper notice. Defendants based their authority to terminate Claude on Article XI, Section 7 of the Local's By-laws, which requires that written notice of termination be given to a musician, at least fifteen days before the start of the engagement, in addition to notifying the Local of such termination. On December 19, 1995, Defendants sent written notice to Claude and the Local terminating Claude's employment with them for the Beauty and the Beast engagement.

On February 10, 1996, Claude filed a grievance against Defendants with the Local, alleging violations of the Local's By-laws for terminating his employment. Following the Local's denial of his grievance, Claude appealed to the International Executive Board of the American Federation of Musicians, and was again denied relief, thereby exhausting all of his union remedies.

On December 18, 2000, Claude filed suit against Defendants in state court, alleging fraudulent misrepresentation, breach of contract and breach of the implied covenants of good faith and fair dealing. On March 8, 2002, Defendants filed a Motion to Dismiss or, in the alternative for Summary Judgment, a Statement of Uncontroverted Facts and a Memorandum in Support of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. Defendants attached the following three exhibits to their memo: (1) a copy of the By-laws of Musicians' Association of St. Louis Local No. 2–197; (2) a copy of the Local's July 27, 1996 Findings of Fact and Conclusion of Law denying Claude's February 10, 1996 grievance; and (3) a copy of the letter from the international union affirming the Local's July 27, 1996 decision. In response, Claude filed Responses to Defendants' Statement of Uncontroverted Facts and a Memorandum in Opposition to Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, along with several exhibits.

Defendants argued in their motion for summary judgment that Claude's state law claims were pre-empted by federal law under Section 301, because resolution of these claims would require the interpretation of an inter-union contract, the Local's By-laws. Subsequently, the trial court entered its judgment stating, "Defendants'

Motion to Dismiss or in the alternative for Summary Judgment, previously called, argued and submitted, is hereby sustained." Claude appeals from this judgment.

 Generally, on a motion to dismiss, review of the trial court's ruling is limited to the sufficiency of the pleadings on their face. *City of Smithville v. St. Luke's Northland Hosp. Corp.*, 972 S.W.2d 416, 419 (Mo.App. W.D.1998). "However, '[w]hen the parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment.'" *Id.* (quoting *Xavier v. Bumbarner & Hubbell Anesth.*, 923 S.W.2d 428, 430 (Mo.App. W.D.1996)); *see also* Rule 55.27(a). Here, both Claude and Defendants filed several documents with the trial court in support of their respective positions, and the court heard arguments from both sides. "Therefore, because the parties introduced evidence beyond the pleadings, and the [trial] court held an evidentiary hearing, this court reviews this matter under a summary judgment standard of review." *See id.*

 "Summary judgment is appropriate when a movant demonstrates, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue of material fact and the admitted facts show a legal right to judgment." *City of Smithville*, 972 S.W.2d at 419 (quoting *Smith v. Taylor–Morley, Inc.*, 929 S.W.2d 918, 921 (Mo.App. E.D.1996)). "The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993). On review of a trial court's order granting summary judgment, this court views the record in the light most favorable to the party against whom summary judgment is entered and accords the non-movant the benefit of all reasonable inferences from the record. *Id.* Thus, our review is essentially *de novo. Id.* at 381.

In Claude's only point on appeal, he argues the trial court erred in granting Defendants' motion for summary judgment because Section 301 does not pre-empt state law claims unless those claims involve the interpretation of a collective bargaining agreement between an employer and a labor organization. More specifically, Claude argues his rights and claims neither arise from, nor are intertwined with, a collective bargaining agreement, and that his petition stated a submissible cause of action for his state law claim of breach of contract.

Section 301 reads as follows:

Suits for violation of contracts between an employer and a labor organization, representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. Section 185 (1978). The United States Supreme Court has interpreted the word "between" in this Section as referring to "contracts," not "suits." *Wooddell v. International Brotherhood of Electrical Workers, Local 71*, 502 U.S. 93, 98, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) (citing *Smith v. Evening News Assn.*, 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). "Hence, a suit properly brought under Section 301 must be a suit either for violation of *a contract between an employer and a labor organization* representing

employees ... *or* for violation of *a contract between such labor organizations."* *Wooddell,* 502 U.S. at 98, 112 S.Ct. 494. (emphasis added).

■ Although collective-bargaining agreements are considered to be the principal form of contract between an employer and a labor organization, Section 301 contracts are not limited solely to collective bargaining agreements, but also can include labor contracts. *Id.* at 101, 112 S.Ct. 494; *Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 26–28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). Specifically, the Supreme Court stated, "[i]t is enough that [the contract] is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerks International Association, Local Unions Nos. 128 and 633,* 369 U.S. at 28, 82 S.Ct. 541. Additionally, the Supreme Court has held that international union constitutions are contracts within the meaning of Section 301. *See id.; Wooddell,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419; *United Association of Journeymen & Apprentices v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); *see also DeSantiago v. Laborers International Union of North America, Local No. 1140,* 914 F.2d 125, 128 (8th Cir.1990); *Korzen v. Local Union 705, International Brotherhood of Teamsters,* 75 F.3d 285, 288 (7th Cir.1996).

The United States Supreme Court has not addressed whether the by-laws of a local union alone constitute a contract within the meaning of Section 301. While in *Wooddell* the employee did allege a violation of both the international union constitution and the by-laws of the local union, the Court did not specifically address the effect, if any, of the local's by-laws independent of the international constitution. *Wooddell,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419. Additionally, neither the Eighth Circuit, nor any Missouri appellate court, has addressed this specific issue. However, in *Korzen,* 75 F.3d at 288, the Seventh Circuit held that there is no federal jurisdiction under Section 301 over an individual union member's claim for breach of a local union's constitution, because "[t]he constitution of a local union ... is a contract between the union and its members." "That claim is a straightforward claim for breach of contract under state common law." *Id.* Therefore, although an individual union member may bring suit on inter-union contracts, "[a] suit on *a contract between a labor organization and a [union] member* is not within the scope of [S]ection 301." *Id.* (emphasis added). We agree.

In interpreting the contracts contemplated by Congress to fall within the federal jurisdiction of the Labor Management Relations Act, the Supreme Court reasoned in *United Association of Journeymen & Apprentices* 452 U.S. at 623, 101 S.Ct. 2546, "that the primary purpose of the Taft–Hartley Act was 'to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process.'" (quoting *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 509, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962)). "As the Senate observed, '[s]tatutory recognition of the collective agreement as a valid, binding and enforceable contract ... will promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace.'" *United Association of Journeymen & Apprentices,* 452 U.S. at 623, 101 S.Ct. 2546 (quoting S.Rep.No.105, 80th Cong., 1st Sess., 17 (1947), 1 Leg. Hist., at 423).

Additionally, the Supreme Court, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202,

212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), stated that Congress did not intend for Section 301 to pre-empt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." The Court reasoned that there is no "suggestion that Congress, in adopting Section 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." *Id.* at 211–12, 105 S.Ct. 1904.

The court in *Korzen* further held that "[a] simple employment contract is not within the scope of [S]ection 301, even when the employer is a union, (citation omitted), for it is neither a contract between an employer and a labor organization nor a contract between two labor organizations." *Korzen,* 75 F.3d at 288. Likewise, here, suits brought by a union member-employee against their employer are only pre-empted by Section 301 if they are to enforce a contract between the employer and the union. *See id.* at 100–01, 112 S.Ct. 494; *Smith,* 371 U.S. at 200, 83 S.Ct. 267. The Local's By-laws are not a contract between Defendants and the Local, but simply an agreement for and among the Local's members. This suit is, in essence, a dispute between these members, Claude and Defendants, involving their membership agreement. Therefore, for the federal district court to have subject-matter jurisdiction pursuant to Section 301 over Claude's suit against Defendants, his suit would have to allege a violation of an employer-union contract, which it does not.

▮ Furthermore, although Section 301 creates federal subject-matter jurisdiction for a breach of contract action between an employer and a labor organization, or between two labor organizations, it only applies "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim." *Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. 1904; *see also DeSantiago,* 914 F.2d at 128. Therefore, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

We find that the Local's By-laws are not a collective bargaining agreement or an inter-union labor contract within the meaning of Section 301. Because Claude's state law claims do not allege a violation of a contract within the meaning of Section 301, nor do they substantially depend on a collective bargaining agreement, his claims against Defendants are not pre-empted by Section 301.

Because Defendants only raised Section 301 pre-emption before the trial court, and failed to challenge the sufficiency of Claude's state law claims, we express no view on the merits or sufficiency of them. We only decide here that the court below erred in holding that Claude's state law claims were pre-empted by Section 301. The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

MARY R. RUSSELL, P.J., and CLIFFORD H. AHRENS, J., concur.