**Rita WHEELER and Charles F. Wheeler, Appellants,**

v.

**Heidi J. WINTERS and Jason A. Winters, Respondents.**

**No. WD 63204.**

Missouri Court of Appeals, Western District.

May 25, 2004.

Michael D. Hufft, Kansas City, MO, for Appellant.

Nick A. Cutrera, Lee's Summit, MO, for Respondent.

Before RONALD R. HOLLIGER, P.J., ROBERT G. ULRICH and JAMES M. SMART, JR., JJ.

ROBERT G. ULRICH, J.

Rita and Charles Wheeler Jr. appeal the trial court's dismissal of their petition for grandparent visitation rights. They contend that (1) the trial court erred in dismissing their petition because it had continuing jurisdiction over the child at the time they filed their petition and (2) the trial court erred in giving full faith and credit to a Kansas decree of stepparent adoption under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act because the District Court of Johnson County, Kansas, lacked subject matter jurisdiction to enter the decree and because the Kansas decree was entered as a result of fraud in the concoction of the decree. The judgment of the trial court is affirmed.

## Facts

Respondent Heidi Winters gave birth to Branden Wheeler on January 6, 1995. Thereafter, she filed a paternity action against Charles Wheeler III in the Circuit Court of Jackson County, Missouri. On May 20, 1997, the trial court determined that Charles Wheeler III was Branden's father, granted custody of Branden to Ms. Winters, granted specific visitation to Mr. Wheeler, and ordered him to pay child support.

In June 2000, Ms. Winters moved to Kansas with her son, Branden. On November 22, 2000, she filed a motion to modify the paternity judgment in Jackson County, Missouri. In 2001, Respondent Jason Winters, Ms. Winters' husband and Branden's stepfather, filed a petition for adoption in the District Court of Johnson County, Kansas. Branden's natural father, Charles Wheeler III, did not personally appear in the adoption proceeding, but submitted his written consent to the adoption. The Kansas court entered its decree of adoption on October 29, 2001, granting Mr. Winters' petition for adoption of Branden and changing his name to Branden Winters.

In March 2002, the Winters moved to Independence, Missouri, with Branden. One year later on March 3, 2003, Appellants Rita and Charles Wheeler Jr., Charles Wheeler III's parents and Branden's natural paternal grandparents, filed their petition for grandparent visitation rights in the Circuit Court of Jackson County, Missouri. The Winters answered the petition and on June 30, 2003, filed their motion to dismiss arguing that the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act requires the trial court to give full faith and credit to the Kansas adoption decree, which effectively severed their relationship with Branden under Kansas law.[1] On August 15, 2003, the trial court

---

1. Under Kansas law, the effect of adoption is that the child not only has new parents but new grandparents as well, and whether natural or birth grandparents can continue con- tact is a matter left solely to the discretion of the adoptive parents. *Sowers v. Tsamolias,* 23 Kan.App.2d 270, 929 P.2d 188, 192 (1996), *aff'd as modified by* 262 Kan. 717, 941 P.2d

granted the Winters' motion to dismiss finding that the Kansas stepparent adoption was entitled to full faith and credit under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act. This appeal by the Wheelers followed.

## Standard of Review

■ Review of the trial court's ruling on a motion to dismiss is generally limited to the sufficiency of the pleadings on their face. *Claude v. Ceccarini*, 110 S.W.3d 843, 846 (Mo.App. E.D.2003). Where, however, the parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment. *Id.* (quoting *City of Smithville v. St. Luke's Northland Hosp. Corp.*, 972 S.W.2d 416, 419 (Mo.App. W.D.1998)). Here, both parties filed documents with the trial court in support of their respective positions. Because matters outside of the pleadings were presented to and not excluded by the trial court, the motion to dismiss was treated as one for summary judgment, and this court reviews the matter under a summary judgment standard of review. *Id. See also* Rule 55.27(a).

Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Claude*, 110 S.W.3d at 846. Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *ITT*, 854 S.W.2d at 377; *Claude*, 110 S.W.3d at 846. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *ITT*, 854 S.W.2d at 376; *Claude*, 110 S.W.3d at 846.

## Points on Appeal

■ The Wheelers raise three points on appeal. They contend that (1) the trial court erred in dismissing their petition because it had continuing jurisdiction over Branden at the time they filed their petition and (2) the trial court erred in giving full faith and credit to a Kansas decree of stepparent adoption under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act because (a) the District Court of Johnson County, Kansas, lacked subject matter jurisdiction to enter the decree and (b) the decree was entered as a result of fraud in the concoction of the decree. Because all of the Wheelers' points are related, they are addressed together.

■ Article IV, § 1 of the United States Constitution requires a state court to give full faith and credit to judicial proceedings in other states. *In re R.C.P.*, 57 S.W.3d 365, 371 (Mo.App. S.D.2001); *Doctor's Assocs., Inc. v. Duree*, 30 S.W.3d 884, 887 (Mo.App. E.D.2000). Absent a showing to the contrary, a judgment of a court of a sister state is entitled to a strong presumption that the court had jurisdiction over the parties and the subject matter and that it followed its laws and entered a valid judgment. *Id.* The party challenging the validity of a judgment has the burden of overcoming this presumption. *Id.*

---

949 (1997). Under Missouri law, the trial court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree if the child is adopted by a stepparent, another grandparent or other blood relative.

§ 452.402.1(5), RSMo Cum.Supp.2002. Whether Kansas law regarding the effect of adoption on grandparent visitation rights is entitled to full faith and credit in Missouri is not raised and is not addressed in this appeal.

Three grounds exist for refusing to give full faith and credit to a sister state's judgment: (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the concoction or procurement of the judgment. *Id.; Estate of Pettit v. Levine,* 657 S.W.2d 636, 640–41 (Mo.App. E.D.1983). A court will not inquire into the merits, logic, consistency, or validity of the underlying judgment. *Duree,* 30 S.W.3d at 887; *Pettit,* 657 S.W.2d at 640.

The Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A, makes applicable to child custody determinations the full faith and credit clause of the United States Constitution. *R.C.P.,* 57 S.W.3d at 372. The Act requires the "appropriate authorities" of a state to enforce the custody or visitation determination of a court of another state if that court had jurisdiction under its own local law and one of five conditions is met. *Id.;* 28 U.S.C.A. 1738A(a)(c) (Cum.Supp.2003).

Similarly, Missouri courts are required under the Uniform Child Custody Jurisdiction Act (UCCJA), sections 452.440 to 452.550, RSMo 2000, to recognize and enforce an initial or modified custody decree of a court of another state if the other state had assumed jurisdiction under statutory provisions similar to the Missouri Act or if the judgment was made under factual circumstances meeting the jurisdictional standards of the Missouri Act. § 452.500, RSMo 2000; *R.C.P.,* 57 S.W.3d at 372; *Kilgore v. Kilgore,* 666 S.W.2d 923, 930 (Mo.App. W.D.1984). Section 452.450.1, RSMo 2000, provides four bases for jurisdiction to determine child custody. *Kilgore,* 666 S.W.2d at 930. The four bases are commonly referred to as (1) home state, (2) significant connection, (3) emergency, and (4) default or vacuum. *In re S.M.,* 938 S.W.2d 910, 917 (Mo.App. W.D.

1997). In particular, section 452.450 provides:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has

been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the

best interest of the child that this court assume jurisdiction.[2]

Section 452.445(4) defines "Home state" as:

[T]he state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.[3]

■ The Wheelers first contend that the Kansas adoption decree was not entitled to full faith and credit in Missouri because the Kansas district court that entered the adoption did not have jurisdiction to modify the 1997 Missouri paternity judgment. In its decree of adoption, the Kansas trial court found that "jurisdiction of the court has attached as to the subject matter of this proceeding and as to all interested parties, and that the court has full power and authority to make an order and decree the adoption herein." A person resisting recognition of a foreign judgment may show lack of jurisdiction, recitals of jurisdiction in the foreign judgment notwithstanding. R.C.P., 57 S.W.3d at 371. Thus, whether the Kansas adoption decree was entitled to full faith and credit in Missouri depends on whether the Kansas district court exercised its jurisdiction in conformity with the UCCJA.[4] § 452.500, RSMo 2000.

■ Section 452.505, RSMo 2000, of the UCCJA governs the modification of a custody decree of another state:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 452.440 to 452.550 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.[5]

---

2. For initial custody determinations, the jurisdictional bases of the Kansas Uniform Child–Custody Jurisdiction and Enforcement Act are substantially similar to those of section 452.450.1. See K.S.A. §§ 38–1348 and 38–1351 (2000).

3. The definition of "Home state" in the Kansas Act is substantially similar to section 452.445(4) in the Missouri Act. See K.S.A. § 38–1337(8) (2000).

4. The provisions of the Parental Kidnapping Prevention Act (PKPA) are similar to many of the provisions of the UCCJA. Because Missouri's adoption of the UCCJA requires recognition of foreign custody judgments in more circumstances than does the federal enactment, the Missouri statutes are in compliance with the federal statutes. Kilgore, 666 S.W.2d at 930 n. 3. Thus, only the Missouri UCCJA is addressed in this opinion except where the PKPA and the UCCJA conflict, in which case the PKPA preempts state law.

5. Section 38–1350 of the Kansas Act, which governs jurisdiction to modify a custody determination made by a court of another state is slightly different than section 452.505, RSMo 2000. It provides:

Except as otherwise provided in K.S.A. 38–1351 and amendments thereto, a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subsection (a)(1) or (2) of K.S.A. 38–1348 and amendments thereto, and:

(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under K.S.A. 38–1349 and amendments thereto, or that a court of this state would be a more convenient forum under K.S.A. 38–1354 and amendments thereto; or

(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person act-

§ 452.505, RSMo 2000. Thus, whether a court has jurisdiction to modify a court decree of another state under the UCCJA depends on (1) whether the court entering the decree has lost jurisdiction or, having jurisdiction, has declined to exercise it, and (2) whether the court seeking to modify the decree has jurisdiction under the Act. *State ex rel. Lopp v. Munton,* 67 S.W.3d 666, 670 (Mo.App. S.D.2002)(quoting *Adams v. Adams,* 871 S.W.2d 105, 107 (Mo.App. E.D.1994)).

■ The Wheelers contend that Missouri had jurisdiction to enter the initial custody decree and that that jurisdiction was continuing and exclusive and had not been relinquished. Generally, the Parental Kidnapping Prevention Act (PKPA) gives a "distinct priority to the 'home state' by encouraging another state with other grounds for jurisdiction to defer to the home state of the child." *Russell v. Ruth,* 115 S.W.3d 404, 407 (Mo.App. S.D.2003)(quoting David Carl Minnemann, Annotation, *Significant Connection Jurisdiction of Court Under § 3(a)(2) of the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A(c)(2)(B),* 5 A.L.R. 5th 550, 581, 1992 WL 767559 (1992)). The undisputed facts show that Branden moved to Kansas with his mother in June 2000. More than six months later in 2001, Respondent Jason Winters filed his petition for adoption in the District Court of Johnson County, Kansas. Kansas was, therefore, the home state of the child at the commencement of the adoption proceeding in Kansas. An exception to the home state priority is found in 28 U.S.C. 1738A(d), which provides:

The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

This subsection appears to "anchor exclusive modification jurisdiction in the original home state as long as the child or one of the contestants remain in that state." *Russell,* 115 S.W.3d at 407 (quoting 5 A.L.R. 5th at 581).

The Wheelers, however, failed to allege facts in their petition or suggestions in opposition to the motion to dismiss (now being treated as a motion for summary judgment) supporting application of the exception to home state priority found in 28 U.S.C. 1738A(d). Specifically, the Wheelers failed to allege that at the time of the filing of the petition for adoption in 2001, Missouri retained exclusive jurisdiction to modify the initial custody decree because it remained the residence of Charles Wheeler III, Branden's biological father. Nor did they allege facts supporting a finding that Missouri retained jurisdiction over the child on another basis such as significant connections. As the party challenging the validity of the Kansas adoption decree, the Wheelers had the burden of overcoming the presumption that the Kansas district court had jurisdiction over the parties and subject matter. *R.C.P.,* 57 S.W.3d at 371. The Wheelers failed to satisfy their burden of showing that Missouri retained continuing and exclusive jurisdiction.

ing as a parent do not presently reside in the other state.
K.S.A. § 13–1350 (2000). However, section 59–2127(b) of the Kansas Adoption and Relinquishment Act, which governs jurisdiction of

a court over a proceeding for adoption if a court of another state has issued a custody decree, is substantially similar to section 452.505, RSMo 2000.

The Wheelers also contend that the Kansas district court did not have jurisdiction to modify the 1997 paternity judgment because Ms. Winters' November 22, 2000, motion to modify the paternity judgment was pending in Jackson County, Missouri, when Mr. Winters filed his petition for adoption. The UCCJA provides guidance for situations where a custody proceeding is pending in another state:

> A court of this state shall not exercise its jurisdiction under sections 452.440 to 452.550 if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 452.440 to 452.550, unless the proceeding is stayed by the court of that other state for any reason.[6]

§ 452.465.1, RSMo 2000.

In their suggestions in opposition to the motion to dismiss, the Wheelers alleged that Ms. Winters' filed a motion to modify the paternity action in the Circuit Court of Jackson County, Missouri, in November 2000. They also alleged that Ms. Winters' motion to modify was dismissed without prejudice by the court on June 22, 2001. Finally, the Wheelers alleged that Mr. Winters' petition for adoption was filed in 2001 in the District Court of Johnson County, Kansas. The record is unclear, however, regarding the exact date in 2001 that the petition for adoption was filed. The Wheelers failed to allege facts sufficient to support a finding that the adoption petition was filed while the motion to modify was pending in Jackson County, Missouri. The Wheelers, therefore, failed to meet their burden of showing that the Kansas district court lacked jurisdiction to enter the adoption decree because a pro-

ceeding concerning the custody of the child was pending in Missouri. Because the Wheelers failed to overcome the presumption that the Kansas district court had jurisdiction over the parties and subject matter, the Winters were entitled to judgment as a matter of law on the issue of whether Kansas lacked jurisdiction to enter the adoption decree.

■ The Wheelers also argue that the Kansas adoption decree was not entitled to full faith and credit in Missouri because the Kansas decree was entered as a result of fraud in the concoction of the decree. In their suggestions in opposition to the Winters' motion to dismiss, the Wheelers alleged that Mr. Winters failed to notify the Kansas court in his adoption petition of Missouri's jurisdiction based on the initial custody determination and the pending motion to modify. The Wheelers also alleged that, after the filing of the adoption petition, the Winters' attorney told them and their son, Branden's biological father, that the Winters would permit them visitation with Branden if their son consented to the adoption. They alleged that their son only signed the consent to adoption based on the representation that they would continue to have visitation. Finally, the Wheelers alleged that the Winters' attorney told them they could not intervene in the adoption. The Wheelers attached to their suggestions in opposition the affidavits of Rita Wheeler and Charles Wheeler III supporting those allegations.

As discussed above, the Wheelers failed to allege facts supporting the conclusion that Missouri had exclusive and continuing jurisdiction based on the original custody determination or a pending motion to modify in Missouri. Regarding the Wheelers'

---

**6.** Section 38–1353(a) of the Kansas Act is substantially similar to section 452.465.1, RSMo 2000.

782

other allegations of fraud, the undisputed facts showed that the Wheelers filed their petition for grandparents' visitation rights in March 2003. After the Winters' filed their motion to dismiss based on the Kansas adoption decree, the Wheelers attacked the decree contending that the misrepresentations of the Winters' attorney induced their son to consent to the adoption. In both Kansas and Missouri,[7] a motion to set aside an adoption decree for fraud must be filed within one year after the decree was entered:

> On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60–259(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A

motion under this subsection (b) does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in K.S.A. 60–309 or to set aside a judgment for fraud upon the court.

K.S.A. 60–260(b) (1994). *See also* Rule 74.06(b)-(d). A party is precluded from attacking a consent for adoption on the basis of fraud more than one year after entry of the adoption decree. *In re Adoption of Hobson,* 8 Kan.App.2d 772, 667 P.2d 911, 914 (1983); *Jones v. Jones,* 215 Kan. 102, 523 P.2d 743, 752–53 (1974), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 515, 42 L.Ed.2d 307 (1974). *See also* § 453.160.2, RSMo 2000.[8] The Kansas adoption decree was entered in October 2001. Having filed their petition over one year after entry of the adoption decree, the Wheelers were precluded from attacking the decree on the basis of fraud. The Winters were, therefore, entitled to judgment as a matter of law on the issue of whether the Kansas decree was entered as a result of fraud in the concoction of the decree.

The judgment of the trial court is affirmed.

HOLLIGER, P.J. and SMART, J. concur.

7. Because the Kansas and Missouri laws are substantially the same, which law applies need not be decided. *Compare Mekelburg v. Whitman,* 545 S.W.2d 89, 91 (Mo.App. 1976)(where Missouri law applied in deciding whether Colorado judgment could be avoided in Missouri on the ground of fraud), *with Young Elec., Inc. v. Susman,* 533 S.W.2d 625, 628 (Mo.App.1975)(where Illinois law applied in deciding whether Illinois judgment was subject to collateral attack in Missouri on ground of fraud).

8. Section 453.160.2, RSMo 2000, provides, "Any consent required for an adoption may only be revoked within one year of the date of such consent for fraud or duress."